

DATE: JANUARY 28, 1999

THE TWENTY-SECOND JUDICIAL DISTRICT COURT CONVENED ON THE ABOVE DATE PURSUANT
TO PREVIOUS ASSIGNMENT. PRESENT HONORABLE, MARTIN E. COADY, DISTRICT JUDGE
PRESIDING, WALTER REED, DISTRICT ATTORNEY, MICHELLE WATSON, DEPUTY CLERK OF
COURT, MERRYL PAYNE, OFFICIAL COURT REPORTER AND CLAUDE BUSH, DEPUTY SHERIFF.
WHEREUPON, THE FOLLOWING MATTERS WERE TAKEN UP AND DISPOSED OF AS FOLLOWS,
TO-WIT:

* * * * *

State of Louisiana  Vs.  RONDY SR VERNON
Case #:   97-CR4 -067763
DATE:  JANUARY 29, 1999          Charge: FEES FOR FILING FELONY CHARGE

THIS CAUSE CAME ON TO BE HEARD ON A MOTION FOR DAUBERT HEARING.
PRESENT, LEWIS MURRAY, ASSISTANT DISTRICT ATTORNEY, WILLIAM ALFORD AND KEVIN
MCNARY, ATTORNEYS FOR THE DEFENDANT, RONDY VERNON AND THE DEFENDANT, RONDY
VERNON.

TESTIMONY FOR THE STATE WAS BEGUN WITH TOM CALLAGHAN BEING CALLED AND SWORN.
IN CONNECTION WITH THIS WITNESS' TESTIMONY, THE STATE OFFERED, FILED AND
INTRODUCED DAUBERT #1, CURRICULUM VICTAE WHICH DETAILS THIS WITNESS'
EDUCATIONAL AND TRAINING BACKGROUND AS TO THE FIELD OF DNA ANALYSIS AND
COMPARISON.

WHEREUPON, UPON COMPLETING THIS DAUBERT HEARING AND HAVING HEARD TESTIMONY,
THE COURT ACCEPTS THIS WITNESS AS AN EXPERT IN THE FIELD OF DNA ANALYSIS AND
METHODOLOGY. THE COURT FURTHER FINDS ALL FOUR REQUIREMENTS LISTED ON THE
DAUBERT MOTION HAS BEEN MET AND THEREFORE ORDERS THE SCIENTIFIC EVIDENCE WILL
BE ALLOWED IN THIS CASE.

MOTION FOR REMOVAL OF COUNSELORS:
-----------------------------------

THIS CAUSE CAME ON TO BE HEARD ON A MOTION FOR REMOVAL OF COUNSELORS PREVIOUSLY
FILED BY MR VERNON. WHEREUPON, MR. ALFORD INFORMS THE COURT AS TO THE
DEFENDANT'S REQUEST TO OBTAIN INITIAL POLICE REPORTS, THAT HE WILL BE GLAD  TO
PRODUCE THESE REPORTS FOR THE DEFENDANT, HOWEVER ONLY BY ORDERS OF THE COURT.

WHEREUPON, COURT IN RECESS (11:15)

COURT RECONVENED AFTER THE BRIEF RECESS WITH THE DEFENDANT, RONDY VERNON,
PRESENT IN OPEN COURT WITH COUNSEL, WILLIAM ALFORD AND KEVIN MCNARY (11:41)

WHEREUPON, MR. VERNON ADVISES THE COURT HE WOULD LIKE TO MAKE AN ORAL MOTION
FOR INSUFFICIENT ASSISTANCE OF COUNSEL.  WHEREUPON, THE COURT ADVISES
MR VERNON HE HAS REVIEWED THE WRITTEN MOTION FOR REMOVAL OF COUNSELORS AND
HEREBY DENIES THAT MOTION, HOWEVER THE DEFENDANT'S OBJECTION WILL BE NOTED

WHEREUPON, THE COURT DEFERRED RULING ON THE PRIEUR MOTION UNTIL MARCH 1, 1999.
FURTHERMORE, ANY EVIDENTIARY MOTIONS THAT ARE FILED BETWEEN NOW AND MARCH 1ST
WILL ALSO BE SET ON THAT DOCKET.

WHEREUPON, COURT ADJOURNED.

FILED FOR THE RECORD THIS THE              DAY OF             , 1999

JOHNNY D CRAIN, CLERK OF COURT

BY:  MICHELLE K WATSON, DEPUTY CLERK OF COURT

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

T-001066-0001

<Page 28>

STATE OF TEXAS        CERTIFICATE OF DEATH       STATE FILE NUMBER

| 1. NAME OF DECEASED (a) FIRST | (b) MIDDLE | (c) LAST | 1x MAIDEN | 1x | 2. DATE OF DEATH |
|---|---|---|---|---|---|
| EDNA | | McCAIN | HOLIDAY | FEMALE | DECEMBER 7, 1996 |

| 3. DATE OF BIRTH | 4. AGE (IN YEARS) | If UNDER 1 YR. | If UNDER 1 DAY | 6. BIRTH PLACE (CITY & STATE OR FOREIGN COUNTRY) | 7. SOCIAL SECURITY NO. |
|---|---|---|---|---|---|
| APRIL 21, 1941 | 55 | MOS | DAYS HOURS MIN | | 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 |

| 8. RACE | 9a. WAS THE DECEDENT OF HISPANIC ORIGIN? | 9b. IF YES, SPECIFY MEXICAN, CUBAN, PUERTO RICAN, ETC.) | 10. WAS DECEDENT EVER IN U.S. ARMED FORCES? | 11. EDUCATION (SPECIFY HIGHEST GRADE COMPLETED, ELEM. OR SECONDARY (1-12, 13-17) | |
|---|---|---|---|---|---|
| WHITE | ☐ YES ☒ NO | | ☐ YES ☒ NO | ☐ COLLEGE (1-3, 14+) | 12 |

| 12. MARITAL STATUS | 13. SURVIVING SPOUSE (IF WIFE, GIVE MAIDEN NAME) | 14. DECEDENT'S USUAL OCCUPATION | 15. KIND OF BUSINESS OR INDUSTRY |
|---|---|---|---|
| ☐ MARRIED ☒ NEVER MARRIED<br>☐ WIDOWED ☐ DIVORCED | N/A | CLERK | CONVENIENCE STORE |

| 16a. RESIDENCE STREET ADDRESS | | | 16b. CITY OR TOWN |
|---|---|---|---|
| 33360 HWY 1055 | | | MT. HERMON |

| 16c. COUNTY | 16d. STATE | 16e. ZIP CODE | 16f. INSIDE CITY LIMITS |
|---|---|---|---|
| WASHINGTON | LOUISIANA | 70450 | ☐ YES ☒ NO |

| 17. FATHER'S NAME | 18. MOTHER'S MAIDEN NAME |
|---|---|
| ELTON HOLIDAY | FREDA CLAYBAUGH |

19. PLACE OF DEATH (CHECK ONLY ONE)

HOSPITAL: ☐ INPATIENT ☐ ER/OUTPATIENT ☐ DOA   OTHER: ☐ NURSING HOME ☐ RESIDENCE ☒ OTHER (SPECIFY) **PARKING LOT**

| 19a. COUNTY OF DEATH | 19b. CITY OR TOWN (IF OUTSIDE CITY LIMITS, GIVE PRECINCT NO.) | 19c. NAME OF HOSPITAL OR INSTITUTION (If not in institution, show street address) |
|---|---|---|
| EL PASO | EL PASO | 400 WEST SAN ANTONIO |

| 20. INFORMANT — SIGNATURE & RELATIONSHIP | 20a. MAILING ADDRESS OF INFORMANT |
|---|---|
| ELTON CRAWFORD      (SON) | 229 9th AVENUE, FRANKLINTON, LOUISIANA 70438 |

| 21. METHOD OF DISPOSITION | 22a. PLACE OF DISPOSITION (NAME OF CEMETERY, CREMATORY OR OTHER PLACE) | 23. NAME & ADDRESS OF FUNERAL HOME |
|---|---|---|
| ☒ BURIAL<br>☐ CREMATION<br>☒ REMOVAL FROM STATE<br>☐ DONATION<br>☐ OTHER (SPECIFY) | MT. HERMON CEMETERY | EL PASO MORTUARY SERVICES |
| | 22b. LOCATION (CITY, STATE)<br>MT. HERMON, LOUISIANA | 412 E. YANDELL |
| | 22c. SIGNATURE OF FUNERAL DIRECTOR OR PERSON ACTING AS SUCH<br>*J. R. Westhead* | EL PASO, TEXAS 79902 |
| | 22d. DATE OF DISPOSITION<br>12-12-1996 | |

25. CERTIFIER

☐ CERTIFYING PHYSICIAN   TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE TIME, DATE, AND PLACE, AND DUE TO THE CAUSE(S) AND MANNER AS STATED.

☒ MEDICAL EXAMINER   ON THE BASIS OF EXAMINATION AND/OR INVESTIGATION, IN MY OPINION, DEATH OCCURRED AT THE TIME, DATE, PLACE, AND DUE TO THE<br>☐ JUSTICE OF THE PEACE   CAUSE(S) AND MANNER AS STATED.

| 25. SIGNATURE & TITLE OF CERTIFIER | 25. DATE SIGNED MO DAY YEAR | 26. TIME OF DEATH |
|---|---|---|
| *[signature]*   M.D., MEDICAL EXAMINER | 2 4 97 | 11:30 P. M |

27. PRINTED NAME & ADDRESS OF CERTIFIER

J.U. CONTIN M.D., MEDICAL EXAMINER     4505 ALBERTA, EL PASO, TEXAS 79905

33. PART I ENTER THE DISEASES, INJURIES OR COMPLICATIONS THAT CAUSED THE DEATH. DO NOT ENTER THE MODE OF DYING SUCH AS CARDIAC OR RESPIRATORY ARREST, SHOCK, OR HEART FAILURE. LIST ONLY ONE CAUSE ON EACH LINE.

Approximate Interval Between Onset and Death

IMMEDIATE CAUSE (Final disease or condition resulting in death) → HYPOTHERMIA

DUE TO (OR AS A LIKELY CONSEQUENCE OF):

Sequentially list conditions, if any, leading to immediate cause. Enter UNDERLYING CAUSE (disease or injury that initiated events resulting in death) LAST

EXPOSURE TO COLD WEATHER

DUE TO (OR AS A LIKELY CONSEQUENCE OF):

DUE TO (OR AS A LIKELY CONSEQUENCE OF):

PART II OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN PART I (i.e., substance abuse, Diabetic, smoking, etc.)

| 35a. AUTOPSY | 35b. AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH? |
|---|---|
| ☒ YES ☐ NO | ☒ YES ☐ NO |

| 37. DID TOBACCO USE CONTRIBUTE TO DEATH? | 38. DID ALCOHOL USE CONTRIBUTE TO DEATH? | 39. WAS DECEDENT PREGNANT? |
|---|---|---|
| ☐ YES ☐ PROBABLY<br>☒ NO ☐ UNKNOWN | ☐ YES ☐ PROBABLY<br>☒ NO ☐ UNKNOWN | AT TIME OF DEATH ☐ YES ☒ NO ☐ UNK<br>WITHIN LAST 12 MO ☐ YES ☒ NO ☐ UNK |

| 40. MANNER OF DEATH | 41a. DATE OF INJURY | 41b. TIME OF INJURY | 41c. INJURY AT WORK | 41d. PLACE OF INJURY (AT HOME, FARM, STREET, FACTORY, OFFICE, ETC.) (SPECIFY) |
|---|---|---|---|---|
| ☐ NATURAL<br>☐ ACCIDENT<br>☐ SUICIDE<br>☒ HOMICIDE<br>☐ PENDING INVESTIGATION<br>☐ COULD NOT BE DETERMINED | 12-7-96 | FOUND AT 9:00 P M | ☐ YES ☒ NO | PARKING LOT |

41e. LOCATION (STREET AND NUMBER, CITY OR TOWN, STATE)<br>400 WEST SAN ANTONIO (PARKING LOT IN TRUNK OF PARKED CAR) EL PASO, TEXAS

41f. DESCRIBE HOW INJURY OCCURRED<br>DECEDENT KIDNAPPED AND PLACED IN TRUNK OF CAR.

| 42a. REGISTRAR FILE NO. | 42b. DATE RECEIVED BY LOCAL REGISTRAR | 42c. SIGNATURE OF LOCAL REGISTRAR |
|---|---|---|
| 01-039169 | FEB 0 6 1997 | *C.* Hector Enriquez, Jr. |

*EXHIBIT A*      000483

| | | | | | |
|---|---|---|---|---|---|
| | | Digline | 54 | 0238 | RS 28A Veh/CCC DLTS S179 |
| | | Browns | 52 | 0154 | Deceased Veil's Kester |
| | | | | | Lifetive Enroute Browns Funeral |
| | | | | | Home Enroute ; M. I. C. |
| | | | | | |
| | | | | | |
| | | | | | |
| 0143 | | 45 | 0148 | 0211 | Sig 62-A Little Village 355-90 |
| | | | | | hwy 21, Alarm Rest Building appears |
| | | | | | Code 4 Keyholder on scene ; Code 4 |
| | | | | | |
| 0150 | | 39 | 0209 | 0212 | Checking a Res at 28352 Patterson |
| | | | | | Rd for a Signal 16 + for F.P.D. |
| | | | | | Subj Edna McClain left Res |
| | | | | | Enroute to above Res Around |
| | | | | | 2330 hrs and has not shown up. |
| | | | | | F.T.L. |
| | | | | | |
| 0200 | | 45 | 0235 | 0238 | Sig 21 Compl Josephine New Kirk |
| | | | | | 64236 Jack Piggott ST 732-2816 |
| | | | | | Subj Carlos W Runn to all Compl |
| | | | | | house Keys and left Res Compl |
| | | | | | want's house Keys back ; Compl wanted |
| | | | | | No Report on charges just want's Keys |
| | | | | | back |
| | | | | | |
| 0233 | | 57 | | 0239 | F.P.D Req we check a Res at |
| | | | | | 19136 Holiday Rd for Sig 16 veh |
| | | | | | F.T.L. |
| | | | | | 000489 |
| 0349 | | 39 | | | F.P.D Req B.O.L.O. For CTD 828 (1A) |

| | | | | | |
|---|---|---|---|---|---|
| | | — | | | TO B.O.L.O. ↑ R Sig. 16/44 |
| | | | | | La TAG. CT 2828 CITY OF FRK. |
| 0458 | | 40 | | | 10-8 ³/m 163335 ADVISED 40 |
| | | | | | TO BOLO. FOR Sig. 16/44 |
| | | · | | | La. TAG CT2 828 CITY OF FRK. |
| 0532 | | 134 | | | 10-8 ³/m 19474 (J. GAINES JR) |
| 0535 | | 39 | | | 10-7 ᴱ/m 16994 (S. GAINES SR) |
| 0542 | | 57 | | | 10-7 ᴱ/m 72770 (R. CORKERN) |
| 0642 | | 28 | | | 10-8 (B. LANG) |
| 0644 | | 19/21/25 | | | 10-8 |
| 0704 | | 121 | | | sig 99 white ford pick-up 2 female |
| | | 40 | area 0707 | 0712 | in veh. poss. tags 5577366 + |
| | | | | | 5577336 NO poss match |
| | | | | | checked from Angie Joprison |
| | | | | | FTL |
| 0714 | | 134 | 1 4 0716 | | out @ 15272 Lee Rd |
| | | | | | paper served |
| 0719 | | 22 | | | Reg Pop's wrecker a Dewitt |
| 0725 | | 17 | | | 10-8 |
| 0725 | | 14 | | | 10-8 |
| 0728 | | 28 | | | 10-8 off traffic Dewitt T.O.T. |
| | | | | | w/P-22 & 167 |
| 0731 | | 4 | | | 10-8 |
| 0739 | | 36 | | | 10-8 |
| 0746 | | 134 | 0755 | 0812 | FPD wanted us to check an area |
| | | | | | between Fricke Cave & John |
| | | | | | T Fisher a Rd to right |
| | | | | | Oliver OTTO Fischer w/m 11-21-65 |
| 0750 | | 16 | | | 10-8 |
| 0757 | | 75 | | | 10-8 w/ ... |

000490

side 1)r

Marty Lewis - 732-0348

| | 0929 | | 4D | 0943 | 0957 | sig 21 Ref to cows in Roadway |
| | | | | | | Hwy 1075 ⓃN of Stewart Rd |
| | | | | | | by bridge |
| 1E | 0920 | 96-4129 | 4D | | | sig 21 Ref to Acc. damage to propert |
| | | | | | | walk in compl. Tracey Martin |
| | 0905 | | 41/13 | | 1006 | out @ Varnado High School |
| | 0933 | | 121 | | 0947 | out @ PNB Ref to traffic from |
| | | | | | | WP-4 w/ school Bus |
| | 0942 | | 14 | | | out @ Deacon Rd |
| | 0958 | | 134 | | 1001 | out w/ stranded motorist Old |
| | | | | | | Columbia Rd Hwy 39 BWH 280 |
| | | | | | | pushed subj out of Roadway |
| | 1000 | 96-4133 | 121 | | 10:20 | out @ Owens Apt #2 Ref to follow up |
| | 1000 | 96-4134 | Bolo | | | Bolo to All units 89 Pont 6RA |
| | | | | | | 4D white subj poss Kidnapped |
| | | | | | | Arm Robbery |
| | 0950 | | 120 | | | Adv Units depart of veh Hwy 41 poss |
| | | | | | | descrip of veh missing from Arn |
| | | | | | | hours Contacted St. Tammany |
| | S | 96-4131 | 17 | | | Arrest Report Aggravated burglary |

000491

Steins Rd 91-2434 R.T.

| Time | | Badge | | Time | Notes |
|---|---|---|---|---|---|
| 1017 | | 134 | | 1023 | out w/ w/m Elderly by midw |
| | | | | | Grocery 10-5 subj |
| 1023 | | 134 | 1027 | 1034 | 10-5 subj to Pope Rd from |
| | | | | | midway |
| | | | | | NAT |
| 1018 4/E | 96-4136 | 121 | 1024 | | Sig 21 Ref to juv leaving scho |
| | | 40 | 1033 | 1035 | Comp Mike Tornice / black starter- |
| 10:35 | | 121 | | | jacket blue jeans w/m |
| | | | | | Starting N/21545 to B.S.O. |
| 10:41 | | R/0. | | 10:47 | from Pearls School w/m B.S.O. 2155 |
| | | | | | Call St. Tammany checking on |
| | | | | | car Hwy 41 near Abita Spring |
| | | | | | Wrong Vehicle |
| 1045 | | 128 | 1/1 | | 10-8 enroute FSO |
| 10:51 | | 35 | 10:54 | 11:11 | 10-8   Med Health in Franklin |
| 10:53 | | 48 | | | 10-8 |
| 10:59 | | 54 | | | 10-8 |
| 10:59 | | 29 | | | 10-8 |
| 11:11 | | 35 | | 11:13 | 10-8   10-15   S.O. |
| 1119 | | 56 | | | 10-8  10-19 |
| 1129 | | 7 | | | 10-8/ |
| 11:29 | | 121 | 11:34 | 11:40 | Complete In 21559 1adult B.S.O. |
| 11:29 | | 10. | | 11:33 | Cl # 296 |
| 11:31 | | 134 | | 11:33 | FTH 999 Old Columbia Rd & |
| | | | | | Wilson Rd. |
| 1147 | | 31 | | | 10-8 |

000492

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  |  |  |  |  | ENTER Missing Subj into NCIC |
|  |  |  |  |  | + Also enter veh As Stolen |
|  |  |  |  |  | this was done also Keep |
|  |  |  |  |  | BOLO on Air |
| 1200 |  | 59 |  |  | 10-8 ~~~~~ |
| 1214 |  | 56 |  |  | 839 9398 |
| 1224 |  | 43 |  |  | 10-8 enroute to target area |
| 1229 | 96-4137 | 40 | 1248 | 1301 | Sig 62-R Dennis Magee 62280 |
|  |  |  |  |  | Mattie Nichols Angie |
| 1236 |  | 130/34 |  |  | 10-97 Target Area |
| 1236 |  | 134 | 1241 | 1243 | Sig 62-A fairgrounds |
|  |  |  |  |  | Code 4 Acc set off |
|  |  |  |  |  |  |
| 1238 |  | 59 |  |  | 10-8 in my Area (Lo 10 + 440 + 450 |
| 1240 |  | 54 |  | 1244 | out Bunkhouse wildlife manage |
|  |  |  |  |  | ment |
|  |  |  |  |  |  |
| 1243 |  | 35 | 12:53 |  | 10-8 10-15 1/2 Enroute to Calli |
|  |  |  |  |  | Kemp Hosp  10-6 Out of Parish |
|  |  |  |  |  |  |
| 1301 |  | 57 |  |  | 10-8 |
| 1301 |  | 34 |  |  | Request Dit on River Rd off |
|  |  |  |  |  | Hwy 437 |
|  |  |  |  |  |  |
| 1313 |  | 21 |  |  | out around Experiment station |
| 1329 |  | 600 |  |  | 10-8 |
| 13:55 | 96-4138 | 40 |  |  | Sig 21 Walk in B.S.O. |
|  |  |  |  |  | R.T.F. |
| 1413 |  | 75 |  |  | 10-8 Back in the Parish  10-15 1T |
| 1420 |  | 25 | 10-8 1439 | 1502 | 10-6 @ CRair Ref to 10-14 |

000493

| | | | | |
|---|---|---|---|---|
| 1515 | 121 | 1523 | 1543 | 10-5 B/m to Camelot 10-15 1049 |
| | 29/41 | | | out @ Camelot Apt Ref to picking |
| | | | | up stolen items |
| | | | | |
| 1523 | 134 | | 1527 | out @ 47020 Marshal WARREN Rd |
| 15:41 | 14 | | | 10-8 |
| 1551 | 59 | | 1553 | out w/ stranded motorist on |
| | | | | LA 20 & Hwy 440 by Richardson |
| | | | | Store  DTL 134 subjon way |
| | | | | |
| 1616 | 134 | 1630 | 1636 | 62-A fire Alarm 16609 Spencer Court |
| | ENON | | 1637 | Spencer  Code 4 / False Alarm |
| | | | | |
| 1642 | 75 | | | 10-7 10-42 |
| 1646 | 47 | 7 | /1 | 10-6 @ Cana Bapt Church |
| | | | | |
| 1652 | 48 | | | |
| 1701 | 45 | | | S/m 16,421 |
| 1714 | 40 | | | E/m 163,526 |
| | | | | |
| 1727 | 45 | 1734 | 1739 | Sig 21 w Ref to Sig 7 Cindy |
| | | | | Dorthy Stringer 63206 Stringer |
| | | | | 986-2434. |
| | | | | |
| | | | | |
| | | | | |
| 1731 | 59 | | | Zone Checked |
| 1731 | 29/7 | | | Zone checked |
| 1734 | 36 | | | Zone checked |

000494

# FRANKLINTON POLICE DEPARTMENT
## RADIO LOG

WNPC-332
STATION CALL SIGN

PAGE #:

| 10-8/10-98 | SIGNAL | ITEM # | MESSAGE | DISPATCHER | ON | OFF | DISPATCHER | ON |
|---|---|---|---|---|---|---|---|---|

# FRANKLINTON POLICE DEPARTMENT
## RADIO LOG

WNPC-332
STATION CALL SIGN

PAGE #: 2

| SIGNAL | ITEM # | MESSAGE | DISPATCHER | ON | OFF |
|---|---|---|---|---|---|
| 12-35-96 | | D. Davis On Duty | | | |
| 10-8 | | T. Colero on Duty | | | |
| 10-8 | | M. Blue-Field on duty | | | |
| 10-8 | | out at trs #2 | | | |
| " | | out at trs #1 | | | |
| out at trs #1 | | | | | |
| 10762-A | | Contacted St. Tammany SD Bolo Ref # 12-341-96 | | | |
| | | Contacted Washn. S.D. & Tang. S.D. McF. 12-34 St. | | | |
| 10 | | Check Sub out 1k 25 - south Pass Failure cable owner for 11-28-65 | | | |
| | | out at trs #1 | | | |
| | | citizens safekeep of loan | | | |
| 10-8 | | M.B. Clayton Mort mkt. / 10-28 | | | |
| | | out at Harcort B. Park | | | |
| | | 10-6 for Bolo to Marr Bolt Bros | | | |
| | | out of door / polo @ L2014 | | | |
| 10-8 | | Bank duty | | | |
| 5-34 | | Bank duty Bennett-Moo. Comm. Usa cottack | | | |
| 10-8 | | 178 Main St /S/S ems. | | | |
| | | 178 Main St 1100 10-97 | | | |
| 10-31? | | Ody 1 on active 10-28 to hea to Check on line only | | | |
| 10-7 | | 10-97 | | | |
| | | M. Beck on Duty | | | |
| | | T. Davis on Duty Mc Calm off Duty | | | |
| | | out a lot & Map's Shlla DaPbros 10 | | | |

# FRANKLINTON POLICE DEPARTMENT
## RADIO LOG

WNPC-332
STATION CALL SIGN

PAGE #: 3

| 10-8 / 10-98 | SIGNAL | ITEM # | MESSAGE | DISPATCHER | ON | OFF | DISPATCHER | ON | OFF |
|---|---|---|---|---|---|---|---|---|---|
| | 12-35-96 | | | | | | | | |
| 1:07 | | | Employee of Unocal adv 10-5 subj walking around park | | | | | | |
| 1:39 | | | Unocal Park | | | | | | |
| 2:01 | | | Out @ Em Subi. Mill & Washard James Mingo to adv hou our D | | | | | | |
| | 5-31 | | to Subj. hou 002-06 | | | | | | |
| | | | Mrs. Clay's is hullfaszone parking in her yard rolling over her flowers | | | | | | |
| | | | 110cke 10-38/8, Dur 308/NAT | | | | | | |
| | 10-10 | 16-13 | | | | | | | |
| | 10-10 | Bq DUI 413 | | | | | | | |
| 28:09 | | | Debie halart adv smoke coming alley Court house | | | | | | |
| | 10-15 | | 6a 00 # 495 | | | | | | |
| 21:39 | | 831-96A Arrested Ronald M Stroba for City attachments | | | | | | | |
| | | | Done from Bill Dollar reg 10-14 to Court house | | | | | | |
| 7:06 | | | Bill Dollar store | | | | | | |
| 2:40 | | | Employee of Unocal reg officer to Unocal building | | | | | | |
| | 2 | | Out of Unocal Park | | | | | | |
| | | | Donna Thras-up On Call bereaux Hursine on 281 | | | | | | |
| | | | Out @ 531 A.P. on Allham-up @6000 | | | | | | |
| | 10-8 | | Donna High security | | | | | | |
| 52 | | | Out @ high end of Ventie road & river law | | | | | | |
| | | | Ke 97 Vicki mode officer to stand by while she secures | | | | | | |
| 16 | (S.N.D.) | | Ke 97 # 1 | | | | | | |
| 124 | | | 101 discharging gun to area come out rear | | | | | | |
| | | | followup gun come on Bail | | | | | | |
| | DCS | | Bomp Rd | | | | | | |
| | | | 8/FTL | | | | | | |

000308

# FRANKLINTON POLICE DEPARTMENT
## RADIO LOG

| | 10-8 10-98 | | |
|---|---|---|---|
| STATION CALL SIGN | WNPC-332 | PAGE #: | 4 |

| SIGNAL | ITEM # | MESSAGE |
|---|---|---|
| 10-26-96 | | |
| S-107 | | veh @ Camol of Hoyum / code 4 / arrived |
| S-107 | | ale around veh / code 4 / lic unk. |
| 10-48 | | veh @ Carmol Rd 15th & Buckhorn / complaint |
| 10-14 | | Jane Pic Pandoon / PT |
| 10-98 | | LA lic 5791035 |
| S-22 | | 10-19 @ Mr A's |
| S-109 | | Main St @ Donna   LA lic 5891934 / code 4 / arrived |
| D-3 | | ale to hold up, access filling to hook |
| | | didn't want on PTF   from Jane David |
| | | been coming by |
| | | LST |
| | | Entry |

| OFF | DISPATCHER | ON | OFF | DISPATCHER | ON | OFF |
|---|---|---|---|---|---|---|
| | | | | SB | | |

000309

**AMERICANA INN**
14387 GATEWAY WEST - EL PASO, TEXAS 79927
(915) 852-3025

| ROOM | NAME |
| --- | --- |
| 106 | |

**DAYS OCCUPIED**

| S | M | T | W | T | F | S | Total Days |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | 1 | | | |

NAME _Bruce Perlow_

STREET _2275 Johnson St._

CITY _Franklin Tn_ STATE _LA_ ZIP _70458_

REPRESENTING _____

CAR LICENSE _____ STATE _____

MAKE OF CAR _____ NO. IN PARTY _____

NOTICE TO GUESTS - This property is privately owned and management reserves
the right to refuse service to anyone, and will not be responsible for accidents or
injury to guests or for loss of money, jewelry or valuables of any kind

Date _12/5/96_ Rate _29.81_ Total _2_

Signature _Ronda Berwin_ Tax (if any) _____

Amount Paid _____

73297



Rondy Vernon Sr. #93369
Camp C Wolf 3 Dorm
Louisiana State Penitentiary
Angola, Louisiana 70712

Americana Inn
14387 Gateway West
El Paso (East)
TX 79927

Rondo,

I do not know if this invoice will help you; but here it is.

R. Uzzle

FD-302 (Rev. 10-6-95)

- 1 -

### FEDERAL BUREAU OF INVESTIGATION

Date of transcription        12/7/96

     CHERYL WARREN contacted the writer at the Washington
Parish Sheriff's Office. WARREN was provided the name of the
interviewing Agent and the nature of the interview. WARREN
provided the following information in the presence of Deputy L.M.
JAMES:

     WARREN stated that she received a collect telephone
call at approximately 6:20 P.M. and it was her brother RONDY
VERNON. WARREN recalls that his voice sounded as if he was
scared. WARREN asked VERNON where he is and VERNON would not
tell her. WARREN pleaded with VERNON to turn himself into the
police. WARREN asked VERNON if he had hurt the woman and VERNON
replied that he did not mean too. WARREN again asked VERNON
where he is, and VERNON finally replied that he was in El Paso,
Texas approximately two blocks from the bus station. VERNON said
that the car is in a parking lot and the woman is in the trunk.
He reiterated that he was going to kill himself.

     WARREN told VERNON that she was going to tell Assistant
Warden WARREN MELVIN, and VERNON said OK but to wait until 7:00
or 8:00P.M. VERNON said that he was scared that the police would
hurt him. VERNON said for her to wait and she heard him talking
with someone in the background. WARREN asked him who the person
was and he replied that it was a friend he had just met. WARREN
did not hear any further background noises.



EXHIBIT

| | | |
|---|---|---|
| Investigation on | 12/7/96 | at    Franklinton, Louisiana |

| File # | 7A-NO-61434 | Date dictated | 12/09/96 |
|---|---|---|---|

by   SA Roger L. Tomberlin

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;

000523

FD-302 (Rev. 10-6-95)

- 1 -

### FEDERAL BUREAU OF INVESTIGATION

Date of transcription        12/8/96

        CHERYL WARREN contacted the writer concerning a telephone call from her brother, RONDY VERNON.  WARREN was provided the name of the interviewing Agent and the nature of the interview.   WARREN provided the following information:

        WARREN stated that she received a collect telephone call from RONDY VERNON at approximately 11:45 A.M. WARREN asked VERNON what happened and to turn himself into the police.   VERNON asked if they had found the body in the trunk.  WARREN pleaded with VERNON  to turn himself in, and VERNON said that he would think about it and call back later.

EXHIBIT

Ex F

000525

Investigation on    12/8/96    at  Franklinton, Louisiana

File #  7A-NO-61434                          Date dictated    12/9/96

by   SA Roger L. Tomberlin

This document contains neither recommendations nor conclusions of the FBI.  It is the property of the FBI and is loaned to your agency;

STATE OF LOUISIANA
Parish of Washington

Twenty-Second Judicial District Court _____ January _____ Term, 19 97

The Grand Jurors of the State of Louisiana, duly impaneled and sworn in and for the body of the Parish of Washington, in the name and by the authority of the said State, upon their oath find and present :

That one _Rondy Vernon, Sr., 2775 Greenlaw Ave., Franklinton, La._

DOB: 10-26-56   B/M   SS#: 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

or between
late of the Parish of Washington, on the __4th__ day of _December and the 7th_, in the year day of December of our Lord, one thousand, nine hundred and __Ninety Six__, in the Parish of Washington aforesaid, and within the jurisdiction of the Twenty-Second Judicial District Court of Louisiana, for the Parish of Washington.

IN VIOLATION OF LSA R.S. 14:30 A.(1) by murdering Edna McCain in the first degree.

(FELONY)

*EXHIBIT*

Ex
G

contrary to the form of the Statutes of the State of Louisiana in such cases made and provided, and against the peace and dignity of the same.

A True Copy of Original
This _3-22-99_ 19 ____
_m. Watson_

District Attorney, 22nd Judicial District of Louisiana.

**STATE'S EXHIBIT**

Jan 24  9 16 AM '97
_Janet D. Rice_
DY. CLERK

STATE OF LOUISIANA
Parish of Washington

Twenty-Second Judicial District Court _____January_____ Term, 19_97_

The Grand Jurors of the State of Louisiana, duly impaneled and sworn in and for the body of the Parish of Washington, in the name and by the authority of the said State, upon their oath find and present:

That one___Rondy Vernon, Sr., 2775 Greenlaw Ave., Franklinton, La.___

_____DOB:  10-26-56   B/M   SS#:  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_____

late of the Parish of Washington, on the__4th__day of__December_____, in the year of our Lord, one thousand, nine hundred and_____Ninety Six_____, in the Parish of Washington aforesaid, and within the jurisdiction of the Twenty-Second Judicial District Court of Louisiana, for the Parish of Washington.

IN VIOLATION OF LSA R.S. 14:64 by committing Armed Robbery of Edna McCain while armed with a dangerous weapon, to-wit: a knife.

IN VIOLATION OF LSA R.S. 14:44.1 Second Degree Kidnapping by forcible seizing and carrying of Edna McCain in order to facilitate the commission of a felony and physically injuring her and keeping her imprisoned while leading the victim to reasonably believe the offender is armed with a dangerous weapon.

(Felony)

contrary to the form of the Statutes of the State of Louisiana in such cases made and provided, and against the peace and dignity of the same.

A True Copy of Original
This 3-22-99 19____
M. Johnson
Dy. Clerk of Court

District Attorney, 22nd Judicial District of Louisiana.

STATE'S EXHIBIT

STATE OF LOUISIANA
Parish of Washington

Twenty-Second Judicial District Court ____ January _____ Term, 19 97

The Grand Jurors of the State of Louisiana, duly impaneled and sworn in and for the body of the Parish of Washington, in the name and by the authority of the said State, upon their oath find and present:

That one __ Rondy Vernon, Sr., 2775 Greenlaw Ave., Franklinton, La.

DOB:   10-26-56    B/M    SS#:  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

late of the Parish of Washington, on the __4th__ day of __December and the 7th__ , in the year

*or between* ... *day of December*

of our Lord, one thousand, nine hundred and ___ Ninety Six _____ , in the Parish of

Washington aforesaid, and, within the jurisdiction of the Twenty-Second Judicial District Court  of

Louisiana, for the Parish of Washington.

3/5/01

30.1

IN VIOLATION OF LSA R.S. 14:~~30 A.(1)~~ by murdering Edna McCain in

the ~~first~~ degree.

SECOND

(FELONY)

Jan 24  9 16 AM '97
~~~~~~ O. Rea
DY. CLERK

contrary to the form of the Statutes of the State of Louisiana in such cases made and provided, and

against the peace and dignity of the same.

District Attorney, 22nd Judicial District of Louisiana.

A True Copy of Original

This 3/16 01

STATE OF LOUISIANA

VERSUS

RONDY VERNON

22ND JUDICIAL DISTRICT COURT

PARISH OF WASHINGTON

STATE OF LOUISIANA

CRIMINAL DOCKET NO: 97-CR4-67763/4

### ANSWER TO MOTION OF PARTICULARS, DISCOVERY AND INSPECTION, PRAYER OF OYER

NOW INTO COURT, through the under signed Assistant District Attorney comes the State of Louisiana and in answer to the Defendant's Motion for Bill of Particulars; Discovery and Inspection; Prayer for Oyer, filed herein says:

1. The State hereby allows inspection of file at a time convenient for defense counsel. This shall include all materials except the screening sheet which is the work product of the State and defense is not entitled to discovery.

Please note that evidence in this case can be inspected at the arresting agency and that the original file can also be inspected at the agency by scheduling an appointment and presenting this answer to said agency.

WHEREFORE, the State of Louisiana prays that these answers be deemed good and sufficient.

_____

ASSISTANT DISTRICT ATTORNEY
22ND JUDICIAL DISTRICT
905 Pearl Street
Franklinton, Louisiana 70438

### C E R T I F I C A T E

I HEREBY CERTIFY that a copy of the foregoing answer has been served on the HONORABLE Winn Gardner , by hand or mail Franklinton, Louisiana, this 13th day of May , 1997.

_____

Assistant District Attorney

DECEMBER 18, 1996

THE TWENTY-SECOND JUDICIAL DISTRICT COURT CONVENED ON THE ABOVE DATE PURSUANT TO PREVIOUS ASSIGNMENT.   PRESENT, HIS HONOR, A. CLAYTON JAMES, DISTRICT JUDGE, PRESIDING, WALTER REED, DISTRICT ATTORNEY, STACY SEAL, DEPUTY SHERIFF, JO ANNE SMITH, DEPUTY CLERK, AND DEBBIE MURRAY, OFFICIAL COURT REPORTER.   WHEREUPON, THE FOLLOWING CASES WERE TAKEN UP AND DISPOSED OF AS FOLLOWS, TO-WIT:

ROLL CALL OF THE GRAND JURY VENIRE:

A ROLL CALL OF THE GRAND JURY VENIRE WAS HAD AND ALL WERE PRESENT WITH THE EXCEPTION OF THE FOLLOWING ON WHOM NO SERVICE WAS HAD:CLINT BARBER, TAMMY BULLE, MARIGAYLE COOPER, HOWARD W. CREEL, KIMBERLY R. DURAY, JERRY EDWARDS, REED PRITCHARD, JACKIE VARNADO, AND THE FOLLOWING WHO WERE PREVIOUSLY EXCUSED BY THE COURT: ANGELA ARD, ALBAN BUSH, MADELINE CARR, GLYNN CROWE, ZELIA CROWE, LUELLA GUY, ELVIE JENKINS, MRS. A.E. KNIGHT, EXCIE PARKER, HOWARD STAFFORD, WILLIAM E. TAYLOR, DOUGLAS TEMPLES, AND LATIMORE WILLIAMS, AND THE FOLLOWING WHO WERE ABSENT: LUTHER ABRAHAM, MRS. ROSETTA BARBER, ROBERT E. BICKHAM, DEBBIE BRELAND, RODEWICK BROWN, ANNIE G. BUCKLEY, MONICA M. BULLOCK, LARRY BURCH, STACEY CONERLY, JAMES COOPER, GLYNN CROWE, ROBIN DILLON, JOHN DOWNEY, JERRY DRAGO, JAMES ERWIN, LOIS FAIRBURN, GARY FORBES, MELVIA HARVEY, MRS. J. B. HOLIDAY, JAMES K. JENKINS, THOMAS A. JONES, VOLIAN LEWIS, JAMES LYONS, FELICIA MAGEE, MRS. LONIA J. MERRITT, HELGA MILEY, LINDA A. MIMS, CLINTON MORRIS, ROBERT MOSES MELISSA PHILLIPS, CLEO SPURLOCK, SHARON THOMAS, VICTOR VARNADO, ANGELINE WALKER, MALSE P. WILLIAMS, AND DAVIS YOUNG.

AT THIS TIME, MRS. GINGER BICKHAM WAS CALLED AS FORPERSON FOR THE GRAND JURY AND THE FOLLOWING ADDITIONAL PEOPLE WERE CALLED AND SWORN AS MEMBERS OF THE GRAND JURY:

|  | | Race |
|---|---|---|
| 212 Harry St Franklinton, La. 70438 | 1.   GINGER BICKHAM  (FOREPERSON) | B |
| 68 Old Columbia Rd. Franklinton, La. 70438 | 2.   LATIMORE WILLIAMS, | B |
| 104 Carrot Sherwin Rd. Angie, La. 70426 | 3.   JERRY D. DUNCAN | W |
| 02 Desmare Franklinton, La. 70438 | 4.   TABITHA N. BARKER | B |
| 275 Harker Rd. Bogalusa, La. 70427 | 5.   RUSSELL E. STEIMLE | W |
| 45 Ward Line Rd. Bogalusa, La. 70427 | 6.   SUSAN STEWART | W |
| 6 Riverside Dr. Bogalusa, La. 70427 | 7.   TYROUNDS M. SMITH | B |
| 1586 Hwy. 39 Franklinton, La. 70438 | 8.   RUTH N. WARREN | B |
| 124 Hwy. 1055 Mt. Herman, La. 70450 | 9.   MILTON MCELVEEN | W |
| Claiborne St. Bogalusa, La. 70427 | 10.   ERNESTINE DOUGLAS | |
| ? | 11.   ROBIN HOLLOWAY ? | B |
| 1 S. Columbia St. Bogalusa, La. 70427 | 12.   JOSEPH MESSINA | |

AT THIS TIME, THE FOLLOWING ALTERNATES WERE CALLED AND NOT SWORN:

1.   LARRY WILLIAMS, JR.
2.   KENDALL SUMRALL

WHEREUPON, THE COURT INSTRUCTED THE JURY AND RELEASED THE GRAND JURY TO THE CHARGE OF THE DISTRICT ATTORNEY.

STATE OF LOUISIANA
CERTIFICATE OF MARRIAGE

STATE FILE NO. 117

LICENSE NO. 5790

**GROOM**

| 1A. LAST NAME OF GROOM | 1B. FIRST NAME | 1C. SECOND NAME |
| --- | --- | --- |

4. PARISH
8. STATE — Louisiana

RESIDENCE INSIDE CITY LIMITS: Yes ☐   No ☐

6. STATE OR COLOR
7. DATE OF BIRTH
State of birth if not in U.S.A. — Louisiana
13. STATE OF BIRTH IF NOT IN U.S.A., NAME COUNTRY — Louisiana
Mother—Maiden name

Father—name — Louisiana
Maiden name — Louisiana

**BRIDE**

| 12A. USUAL RESIDENCE—CITY, TOWN, OR LOCATION | 12B. FIRST NAME |
| --- | --- |
| One 12th Avenue | Franklinton |

16. RACE OR COLOR
19. DATE OF BIRTH — 4-6-36
22. STATE OF BIRTH — Louisiana
Father—name

18. PARISH — Washington
20. STATE OF BIRTH — Louisiana
23. MOTHER—MAIDEN NAME
24. STATE OF BIRTH — Louisiana

26. CITY OR TOWN — Franklinton

27. DATE OF ISSUE — 6-20-75

**CERTIFICATE OF ISSUE**

**MARRIAGE CERTIFICATION**

I HEREBY CERTIFY that _____ and _____

were joined in marriage by me in the City or Town of Franklinton, Parish of Washington, State of Louisiana, their consent having been first obtained, in the presence of the three undersigned competent witnesses, in accordance with the laws of said State, this _____ day of September, 19 75.

30. SIGNATURE OF GROOM
32. SIGNATURE OF BRIDE

29. SIGNATURE OF WITNESS
31. SIGNATURE OF WITNESS
33. SIGNATURE OF WITNESS

34. SIGNATURE AND TITLE OF OFFICIANT
36. TITLE — Minister

37. DATE RECORDED (MONTH-DAY-YEAR)

35. LOCAL RECORDING OFFICER'S SIGNATURE   | DATE

**RECORDING OFFICER**

NO. OF THIS MARRIAGE | IF PREVIOUSLY MARRIED

RHEA BRUMFIELD VERNON                    22ND JUDICIAL DISTRICT COURT

VERSUS NO.: 74405                        PARISH OF WASHINGTON

RONDY VERNON                             STATE OF LOUISIANA

FILED: _____                 DY. CLERK: _____

## JUDGMENT OF DIVORCE

The court after considering the pleadings in this case, including the petitioner's affidavit attesting to the truth of facts, and upon finding that a hearing is not necessary, the motion for default judgment entered on October 9, 1996, is hereby confirmed and made final as follows:

IT IS HEREBY, ORDERED, ADJUDGED AND DECREED that a judgment of divorce be granted between the petitioner, RHEA BRUMFIELD VERNON, and defendant, RONDY VERNON, forever dissolving the bonds of matrimony heretofore existing between the parties.

IT IS HEREBY, FURTHER ORDERED, ADJUDGED AND DECREED that the parties shall share the joint legal care, custody and control of the minor children, RONDY LASHAD VERNON, JR. and SUMMER VERNON, with petitioner, RHEA BRUMFIELD VERNON, being designated as the domiciliary parent. Defendant, RONDY VERNON is to have visitation with the minor child as agreed upon between the parties.

JUDGMENT READ, RENDERED AND SIGNED in _____ on this _____ day of _____, 1996, at Covington, Louisiana.

_____
JUDGE

JUDGMENT PREPARED BY:

SOUTHEAST LOUISIANA LEGAL
SERVICES CORPORATION
417 N. THEARD STREET
Post Office Box 2330
Covington, Louisiana 70434
Phone:  (504) 893-0076

BY: _____
    SACHIDA R. RAMAN
    BAR ROLL # 22140

A True Copy of Original

This _01/26/04_

_____
Dy. Clerk of Court

## STATE OF LOUISIANA VS. ERIC BRISTER

This matter came on to be heard on a Seventy-Two Hour Hearing. The defendant, Eric Brister, having been charged with Aggravated Battery, was advised by the Court of his right to Counsel, and having stated to the Court that he was unable to afford Counsel, the Court appointed the Office of the Indigent Defender to represent him. The Court further advised the defendant that his bond was set at $40,000.00 Cash, Property or Surety.

## STATE OF LOUISIANA VS. OTIS COTTON

This matter came on to be heard on a Seventy-Two Hour Hearing. The defendant, Otis Cotton, having been charged with Theft by Fraud under $100.00, Obstruction of Justice and Theft over $100.00, was advised by the Court of his right to Counsel, and having stated to the Court that he was unable to afford Counsel, the Court appointed the Office of the Indigent Defender to represent him. The Court further advised the defendant that his bond was set at $2,500.00 Cash, Property or Surety.

### REPORT OF THE GRAND JURY

Present, Millard K. Gatewood, Assistant District Attorney and Ginger Bickham, foreperson of the Grand Jury. At this time, Ms. Bickham stated to the Court that a quorum was present and the Indictment was reached by a unanimous verdict. At this time, Mr. Gatewood filed the following report of the Grand Jury:

The Grand Jury of Washington Parish, Louisiana met at the courthouse in Franklinton on the following date and took the actions set forth below:

On January 23, 1997 a quorum was present and in the matter of RONDY VERNON, SR. a TRUE BILL was returned for:

1.  First Degree Murder
2.  Armed Robbery
3.  Second Degree Kidnapping

Franklinton, Louisiana, this 24th day of January, 1997.

/s   Ginger Bickham

At this time, the Court ordered that bonding procedures be maintained as previously set.

Filed for the record this 24th

day of January, 1997.

JOHNNY D. CRAIN
Clerk of Court and Ex Officio
Recorder of Minutes

BY: /s/ Janet D. Riley
Janet D. Riley
Deputy Clerk of Court

## IMPEACHMENT --BIAS, INTEREST AND CORRUPTION

The testimony of a witness may be discredited by showing that the witness will benefit in some way by the defendant's conviction or acquittal, that the witness is prejudiced, or that the witness has any other reason or motive for not telling the truth.

## IMPEACHMENT -- PRIOR CONVICTION OF A WITNESS



The testimony of a witness may be discredited by showing that the witness previously was convicted of a crime. The conviction does not necessarily mean that the witness is failing to tell the truth. It is a circumstance you may consider along with all other evidence in deciding whether you believe any or all of his testimony.

## IMPEACHMENT -- PRIOR INCONSISTENT STATEMENT

The testimony of a witness may be discredited by showing that the witness made a prior statement which contradicts or is inconsistent with his present testimony. Such prior statements are admitted only to attempt to discredit the witness -- not to show that the statements are true.

## CRIMINAL INTENT

Criminal intent may be specific or general.

Specific criminal intent is that state of mind which exists when the circumstances indicate that the defendant actively desired the prescribed criminal consequences to follow his act or failure to act.

General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.

General criminal intent is always present when there is specific intent.

Whether criminal intent is present must be determined in light of ordinary experience. Intent is a question of fact which may be inferred from the circumstances.

## SECOND DEGREE MURDER

The defendant is charged with the second degree murder of Edna McCain.



Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.

Second degree murder is also the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of second degree kidnapping; armed robbery; first degree robbery; or simple robbery, even though he has no intent to kill or to inflict great bodily harm.

Second degree kidnapping is the forcible seizing and carrying of any person from one place to another or the imprisoning or forcible secreting of any person wherein the victim is:

1) used as a shield or hostage;

2) used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;

3) physically injured or sexually abused;

4) imprisoned or kidnapped for seventy-two or more hours, except as provided in R.S. 14:45(A)(4) or (5); or

5) imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.

A dangerous weapon includes any gas, liquid, or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.

Armed Robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.

Anything of value must be given the broadest possible construction, including any conceivable thing of the slightest value, movable or immovable, corporeal or incorporeal, public or private, and including transportation, telephone, and telegraph services, or any other service available for hire. It must be construed in the broad popular sense of the phrase, not necessarily as synonymous with the traditional legal term "property."

First Degree Robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.

Simple Robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed

7

with a dangerous weapon.

An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the defendant actually committed the completed offense with which he is charged.

A person who has specific intent to commit a crime and who does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

Mere preparation to commit a crime shall not be sufficient to constitute an attempt.

I have already defined specific criminal intent for you and you are to use this definition in your deliberations on this offense.

The criminal agency of the defendant as the cause of the victim's death must be established beyond a reasonable doubt. However, it is not essential that the act of the defendant should have been the sole cause of the victim's death. If the act hastened the termination of life, or contributed directly or indirectly to the victim's death, in a degree sufficient to be a clearly contributing cause, the defendant's act constituted the "legal cause" of death. Another mode of analysis is determining whether or not the defendant's conduct is a substantial factor in bringing about the victim's death.

Thus, in order to convict the defendant of second degree murder, you must find:

1) that the defendant killed Edna McCain; and

2) that the defendant acted with a specific intent to kill or to inflict great bodily harm.

OR

1) that the defendant killed Edna McCain, whether or not he had an intent to kill; and

2) that the killing occurred while the defendant was engaged in the perpetration or attempted perpetration of a second degree kidnapping; armed robbery; first degree robbery; or simple robbery,

## SENTENCE

Sentencing is not the function of the jury. It is the duty and responsibility of the Court. However, in order to assure that you are fully advised of the law, I have chosen to inform you of

96-34220'7

VC903

12-8-96

pag'1

It was on a Wednesday at a gas station in Franklinton LA when I decided to rob a lady. I wanted the money that she had in her purse. I had a knife and I saw the store close. I had the knife, a kitchen knife, to scare her. I walked around the back of the store and met her as she was opening the door of her car. We started strugleing and she started screaming. I was pushing her into the car because cars were driving by. She pulled off my hat. I panicked and we both got in the car and left.

                    - over -

EL PASO POLICE DEPARTMENT
RECORDS SECTION
DOCUMENTS CONFIDENTIAL BY LAW

CERTAIN ELEMENTS OF THIS CASE ARE SUBJECT TO
NONDISCLOSURE IN ACCORDANCE WITH THE TEXAS
OPEN RECORDS ACT (6252-17a V.A.C.S.)
DATE:
BY:
TO:

000202

96-34228,

VC803

Page 2

She asked me when I was going to let her go. She said she would give me time enough for you to get away. She said "Please don't hurt me. I promised her that I would not hurt her.

She rode in the front seat and I drove the car all the way to Lake Chade. I was afraid she would jump out and run and hollar (yell) when I pulled up to the gas station. I smoked crack the whole trip. I forgot to let her out of the trunk along the way. I got to El Paso and got a motel room for the night.

I checked on the woman the

EL PASO POLICE DEPARTMENT
RECORDS SECTION
DOCUMENTS CONFIDENTIAL BY LAW

OPEN RECORDS ACT (6252-17a V.A.C.S.)
NONDISCLOSURE IN ACCORDANCE WITH THE TEXAS
CERTAIN ELEMENTS OF THIS CASE ARE SUBJECT TO

DATE:                    BY:            TO-

00020

96-342287
JC803

page 3

next morning and she was ok.
I went to the bus station and
came back to check on her. She
said she was ok. She said let
me out of the trunk. I thought
she would knock and some one
would let her out. I threw the key
away in ElPaso. I came to Albuquerque
on Friday afternoon.

signed _____
                    Vernon Rondy

witness  SA Jeffrey Lleggitt  AQ FBI
witness _____

   If I would have had money I would have
gone back to Franklinton to turn myself

Agree with statement but before turn out temper until I
talk to a lawyer  Jeffrey Lleggitt

EL PASO POLICE DEPARTMENT
RECORDS SECTION
DOCUMENTS CONFIDENTIAL BY LAW

CC020

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription     12/10/96

     RONDY VERNON was advised of his rights using the Federal Bureau of Investigation (FBI) form FD-395; Interrogation Advice of Rights. VERNON indicated that he understood his rights and then signed the waiver portion of the form. VERNON then provided the following information:

     On Wednesday, December 4, 1996, VERNON left his home on foot to walk to purchase some cigarettes. When he approached a convenience store in Franklinton, Louisiana he noticed a woman employee locking the store and walking toward her car. He walked behind the store and met her as she opened her car door. She had her keys in her hand and VERNON grabbed her. She began to yell and fight with him. He was worried that someone driving by the store would notice them, so he pushed her into the car. During the struggle the woman removed his hat. VERNON was afraid that she would recognize him. VERNON then pushed her into the car and closed the door.

     VERNON carried a medium-sized kitchen knife with him that evening. He planned to use the knife to scare her so that she would give him the money. She did not have a bank deposit bag or any large sums of money. After they were both in the car, she gave him the only money that she had which was $25 out of her wallet. It was all the money that she had. If the woman was carrying a deposit bag or large sums of money, she must have dropped it during the struggle. VERNON remembers having the knife with him during the initial assault, but he lost it somehow and does not know where it went. He checked the floor of the car and under the floor mats, but did not find the knife.

     He did not want to have sex with the woman or steal her car. He just wanted to take her money. VERNON has seen the woman on one or two previous occasions. He sometimes purchases gas or cigarettes from the store. He does not know her name.

     Beginning around the middle of the Summer, VERNON developed a serious cocaine habit. He estimates that he has been spending about $200 or $300 per week on cocaine. He smokes crack cocaine, sniffs powdered cocaine and injects cocaine. VERNON

---

Investigation on   12/8/96     at   Albuquerque, New Mexico

File #   7A-NO-61434 - 44

by   SA JON H.A. WILLIAMS
    SA JEFFREY L. LEGGITT   JLL:pma     Date dictated   12/9/96

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

000424

.·D-302a (Rev. 11-15-83)

7A-NO-61434
Continuation of FD-302 of   RONDY  VERNON                        , On   12/8/96   , Page   2

works at Trinity Marine Company.  He is a welder involved in the
construction of river barges.  He earns approximately $450 to
$500 per week.  On the Wednesday afternoon prior to the assault,
VERNON went to a local pawn shop to pawn his television and air
conditioner.  The pawn shop paid him $400.  After obtaining the
money from the pawn shop he went to his crack cocaine supplier
and purchased a large amount of rock cocaine.  He had his crack
pipe in his pocket with him.

They left the parking lot of the convenience store with
him driving and the woman in the front passenger seat.  She rode
in the front passenger seat until they arrived at an area near
Lake Charles, Louisiana.  He then became concerned that at a gas
station or some other stop she would jump out of the car and
start screaming.  While they were riding together in the car, she
told him that she wanted to go home to see her kids and family.
She asked him to please not hurt her.  VERNON promised her that
he would not hurt her and that he would let her go.  Since he was
worried about what she might do if she jumped out of the car, he
made her get in the trunk.  There were no blankets, food or water
in the trunk.

From the area near Lake Charles, Louisiana, VERNON
drove the car to El Paso, Texas.  He stopped a few times for gas
and food along the way.  He sometimes gave her chips and candy
while she was riding in the trunk.  VERNON did not stop for an
actual meal during the trip.  He ate chips and candy himself.  He
does not remember what he drank along the way.  VERNON did not
provide the woman in the trunk with either cokes, coffee or
anything else to drink during the trip.  VERNON drove from
Franklinton to El Paso making only brief stops for gas or snacks.
He smoked crack cocaine while he drove.  He was "pretty wired"
during the whole trip.

When he got to El Paso, Texas he pulled off to spend
the night at a motel.  It was late at night when he checked in.
He slept in the room until morning.  Before going into the motel
he slightly opened the trunk to ask her if she was okay.  The
next morning he returned to the trunk of the car and tapped on it
to ask her if she was okay.  She asked him to let her go.  He
told her that he planned to let her go.                    000425

VERNON went to the El Paso bus station to purchase a
bus ticket.  After getting the bus ticket he went back to the
motel and told her that he was leaving on a bus.  She again asked
to be let out of the trunk.  He told her that he would let her

was in the motel parking lot and VERNON asked them what time it was.  It was about the middle of the morning on Friday, when he left the motel.  There were several people coming in and out of the motel using the parking lot.  VERNON expected that if the lady yelled or made noise in the trunk that the people would hear her and let her out.  VERNON traveled to Albuquerque, New Mexico by Greyhound bus.  He did not call anyone to explain that she was in the trunk of the car, and he did not go back to the motel to let her out of the trunk.

If he would have known that she was going to die in the trunk, he would have called someone in El Paso to tell them that she was in the car.  She was not hurt when she got into the trunk.  She was not tied up.  VERNON does not know why she eventually died in there.  He called his sister from the El Paso motel.  He told his sister that he was going to let the woman go.  The timing of the bus trip was wrong and he did not get a chance to let her out of the trunk.  VERNON emphasized that when he left the El Paso motel the woman was still alive in the trunk.  Someone should have heard her.

During the days that they were traveling together, VERNON never had any type of sex with the woman.  He explained that the serious cocaine use often reduces sex drive.

When VERNON arrived at the Albuquerque bus station he asked some street people where they stayed.  They explained that there were several homeless shelters where men could spend the night.  On Saturday, December 7, 1996, VERNON met with a priest at St. Martin's Church.  He explained to the priest that he may have been charged with murder.  He told the priest that the woman was alive when he left her.  He also told the priest that he was considering committing suicide by cutting himself and so he would bleed to death.  The priest told him that he would pray for him.

VERNON was questioned about a previous incident at the same convenience store which occurred on November 15, 1996.  He indicated that he was at home that evening.  He was told that at about the same time in the evening at the same store, a young white female clerk was approached by a man who jumped out of the bushes and tried to rob her.  VERNON denied that he was involved in the incident with the other clerk.  VERNON spent the evening at home.

VERNON explained that he had been accused of raping an 18 year old girl earlier in the Summer of 1996.  The girl's stepfather was a policeman.  He met the girl at a pay phone in

000126

7A-NO-61434
Continuation of FD-302 of   RONDY VERNON _____

,On ___12/8/96___ ,Page ___4___

town and they went for a ride.  There were several witnesses
across the street from the pay phone who saw the girl voluntarily
get in the car with him.  They went to a local club at
approximately 11:00 p.m.  The club was closed and VERNON was
scheduled to go to work the next day.  VERNON and the 18 year old
girl kissed while sitting on the back of the car and then he took
her home.  The police have cleared him in the matter.

VERNON said that the most recent incident was the first
time that he had tried to roll someone for money.

VERNON does not know anything about a 25 caliber
semiautomatic pistol which may have been in the car when it was
taken.  VERNON never saw a pistol, and never used a pistol.

While VERNON was in Albuquerque he telephoned his
sister several times.  He discussed giving himself up to police
officers.  He had gone for a short walk from the St. Martin's
shelter.  As he approached the center he was told by another
individual on the street that the "Feds" were in the center
looking for a black man.  VERNON then decided to leave the
vicinity.  He called his sister and told her that the FBI was
looking for him.  VERNON then walked to the Bernalillo County
Detention Center where he found a female police officer who
agreed to arrest him.

A signed statement was prepared to summarize the major
points of the interview.  VERNON read the statement which was
prepared by Special Agent (SA) LEGGITT, and agreed with the
content.  VERNON then declined to sign the statement, indicating
that he would like to consult with his attorney before he signed
anything. The unsigned statement is attached to the report.

VERNON was also presented with an FBI form FD-26,
Consent to Search.  The form requested that VERNON provide the
FBI with samples of head hair and pubic hair.  VERNON then told
the agents that he wanted to talk to a lawyer before he signed
the form to provide the hair samples.  He volunteered to provide
the samples at a later time.

At the conclusion of the interview, VERNON asked the
agents about what specific charges had been filed against him.
He was concerned whether or not the state of Louisiana was
charging him with Simple Kidnapping or Aggravated Kidnapping.  He
also wanted to know about potential robbery charges and/or murder
charges originating from El Paso, Texas.  He was told that the
specific information concerning the state charges had not been

000427

D-302a (Rev. 11-15-83)

7A-NO-61434
Continuation of FD-302 of   RONDY VERNON _____ , On __12/8/96__ , Page __5__

provided to the interviewing agents.  It was explained that some
type of federal charge related to the kidnapping (18, USC Section
1201) would be filed with a magistrate the following morning.  It
was also explained that a Federal Grand Jury in Louisiana would
probably review the evidence to consider more specific kidnapping
charges.

SUPPLEMENTAL REPORT

*BY DEPUTY INVESTIGATOR*
*MICHAEL L. VARNADO*

STATE OF LOUISIANA
VS.
RONDY "RON" VERNON

CHARGE:  ATTEMPTED AGGRAVATED KIDNAPPING/CARJACKING/FIRST DEGREE
MURDER OF EDNA MCCAIN

On 11-5-96 Deputy Varnado was assigned to lead the investigation in the above entitled matter which happened on 11-15-96 along with a similar incident which happened around 11:00 pm at K&S #1 located at the corner of Mott & 11th avenue in Franklinton.  In the first mentioned incident Ms. Shelia Brumfield was closing the store when a black male, whom she recognized as visiting the store earlier that evening, attacked her trying to force his way into her car, even to the point of beating on the window with his fists.  She was parked in exactly the same spot as the victim in the second incident.  She was absolutley, positive that she could recognized the guy again and that he had came into the store numerous times.  She said she felt sure he had a nickname but that she just couldn't remember and be sure what that name was.  The Franklinton Police department recovered the video tape of the suspect in the first incident the morning of the second incident.  Harold Varnado secured the video and turned it over to M. Varnado.  The Franklinton Police Department found a "skinning" knife at the scene of the crime.  The knife was not secured properly when turned over to Varnado.  Varnado secured the knife in into evidence and turned over to the FBI as well.  The knife has what appears to be blood on the handle and is very sharp.  Varnado secured the knife and turned it over to the FBI for DNA testing and fingerprinting, hair sampling, etc.  It was later determined through reports that a Sgt. Jones of the FPD actually picked up the knife, turned it over to Maples, who in turn put it on the chief's desk.

A lottery ticket, which had apparently been purchased by the victim, was also reportedly found near where the knife was recovered.  It was reported to Varnado by Virgil Maples, that chief Armand had the lottery ticket "laying on his desk".  Varnado instructed Maples to secure it and bring it to the Sheriff's Office to be properly secured and processed.  The lottery ticket has been secured from the FPD by Varnado and turned over to the FBI.

M. Varnado, J. Edwards, and Roger Tomberlin FBI, video taped the crime scene and made and extensive search.  By the time the crime scene was turned over to the the SO and FBI it had been rained on and previously "processed" by the FPD.  (See video).

Varnado began the process of trying to identify the person on the video.  An extensive search is ongoing for Mrs. Edna McCain, the victim in the second incident.

Mrs. Brumfield was shown two different lineups.  The first lineup was shown to her by Agent Edwards and Detective Foil.  She was certain that none of the people in the lineup was her attacker.  The second lineup was shown to her by M. Varnado and Dan Foil.  She was certain that none of the persons in the lineup were her attackers.  She was shown Thurmond Cotton, who appeared in the second lineup, and who had stolen a knife from Crawford's Slaughter House, the previous Monday.  She said that she was certain that Cotton was not her attacker.  She said that she was sure that she would recognize the guy because he came in the store all the time.  After discussions it was decided that showing her numerous line-ups was not necessary because she was so insistant that she knew the guy, and had had several conversations with him as a customer in the store.

Deputy Denver Miller and Dan Manning found a car registered to Rondy Vernon parked less than a block from the crime scene by the "Pool Hall" on 12th avenue.  Witnesses were interviewed by Miller and Manning and they had determined that the car had been abandoned there a good while.  (At least over night).  Officers involved in the case recognized the significance of Vernon's vehicle being abandoned so close to the crime scene.  (See Vernon's criminal history).  Agent Edwards, Agent Tomberlin, M. Varnado and Sheriff Blair traveled to the "Huts" on the Springhill Highway.  (See Edwards report on the identification.)  Minutes after the

identification, a call came in from Mrs. Vickie Wilkes, 215 boat ramp road, and employee of SAK #1 who had viewed the video tape from the first incident, and who too had recognized the guy on the tape as a regular customer, but could not come up with his name. Ms. Wilkes was describing an incident which had happened "a few minutes ago" at the store, in which a young white male, she knew his name, came into the store wanting to see the video so he could tell everbody who the guy was. He was just trying to help. He had been by the police department and SO. This had apparently alarmed Ms. Wilkes. In an effort to calm her, Varnado stated that we were looking for a black guy and that she should try to calm down and relax. Varnado asked her if she knew Rondy Vernon, she clapped her hands together, loudly, and stated, excitedly that Vernon was the guy on the video and that she couldn't remember his name. She continued that Vernon drove an old blue Camero. She was extremely pleased with herself for having now remembered him and calmed down instantly. (see FBI Tomberlins field interview.)

After the indentification Varnado had Mike Daniels start typing a warrant for Vernon for attempted kiddnapping of Ms. Brumfiled. (Nov. 15th incident). After returning from boat ramp road, Varnado applied for and recieved the warrant for attempted aggravated kidnapping. Varnado, Tomberlin, Edwards, and L.M. James went to the scene of the abandoned (Vernon's) car. Note: Varnado had instructed Dan Manning to keep the car under survielance until such time as it could be secured. Denver Miller video taped the car. It is on the same video as the crime scene. The owner of the pool hall was interviewed and it was determined that the car had been abandoned there at approximatly 8:30 or 9:00pm the night of the 2nd incident (12/4/96). Varnado ran the Li. plate on the vehcile and noted it was registered to the suspect, Rondy Vernon. Varnado had the vehicle towed and impounded at the sheriff's motor pool to be processed by the FBI.

On 12/6/96 LM James produced Rondy Vernon's most recent live/in girl friend, to Varnado at the SO. She was briefly interviewed by Varnado and turned over to be statementized by Agent Edwards. (See Edward's file for details.) She describes an incident in which Vernon came home, out of breath, scared, saying that he had done something terrible and that the police where going to come get him on this one. It was definetly a Friday night and it was about 3 weeks ago. She is positive that it was just before Thanksgiving and on a Friday night. She said that he had cut himself. She continued that he took all his clothes off rapidly and changed into different ones.

12/7/96, I tried to lay down for a few hours last night and all I could do was dream about finding poor Mrs. Edna. I dreamed we found her mostly decomposed, but still alive. It was the worst nightmare I have had in a long time. I am sick of this stuff.

On this date Varnado solicited the help of Mr. Melvin Garrett, WPSO. I asked him to please help me locate Rondy before the lady died. Melvin came in a few hours later with Mrs. Cheryl Warren, the sister of Rondy Vernon. A hand written statement was obtained from Mrs. Warren. (See statement). She said Rondy called about 2:20pm saying he was Dwayne. She recognized his voice. She started begging Rondy to tell where the lady was so she could be saved. He told her it was probably too late. A recorder and a trap/trace were place on her phone. Vernon called back later (see tape) and told where the car and the lady could be found. Note, Vernon had called a total of six times. Five of those times were recorded. Either, Melvin Garrett, LM James, or Kathy Dyson, Deputies of the WPSO were at the residence at the time of the calls, secured the tapes, and turned them over to M. Varnado. H. Varnado copied the tapes and the original was secured into evidence. The quality is not the greatest but the message is the worst part. Vernon gave a location where he was at, El Paso, near a Trailway bus station. Varnado will have the tapes enhanced to try to increase the quality for evidence purposes.

The FBI requested that Sheriff Blair call El Paso and give them the information on the location of the car. A short time later the car and the poor dead lady were found. The crime scene is being processed by the FBI and Dan Foil is in route to El Paso to assist authorities and to recover as much information as possible.

12/8/96 Varnado received information from the trap/trace by the FBI, that the first call by Vernon was from Kenedell, Tx. at 1:04pm on 12/7/96. It was later determined that this information was not accurate.

Varnado has caused a warrant to issue for First Degree Murder of Mrs. Edna McCain. Judge Watts signed the warrant and ordered NO BOND.

12/9/96 all the physical evidence, tapes, and photographs were turned over to Agent Edwards for process and copy purposes. A statement from the FBI from Vernon was faxed the the Sheriff's Office and placed in the file.

Normally, during this part of the case, everyone is slapping each other on the back saying what a great job we did. Not this time. We raced against the clock and lost.

| | ASSIGNMENT | RESULTS |
|---|---|---|
| ocate owner of knife, confer with Crawford's Meat Plant owner and xamine employees. | a. FPD Chief Lynn Armand<br>b. FPD Asst. Chief Charles Brumfield<br>c. owner of Crawford's Meat Plant<br>d. employees of Crawford's Meat Plant on duty | After visual inspection of the knife by FPD officials, it was thought that the knife was from Crawford's Meat Plant. Chief Armand and Asst. Chief Brumfield traveled to Crawford's and met with the owner. They obtained a list of all employees and physically examined the arms and hands of all employees then on duty. No worker was found to have any recent cuts or bruises, or any other indication of a physical struggle. While there, the Mayor telephoned Chief Armand advising that WPSO and the FBI were taking over the investigation. The precise moment WPSO and the FBI assumed primary responsibility was not recorded. Defendants say it occurred between 8:00-8:30 a.m. Chief Armand and Asst. Chief Brumfield finished their business, returned to FPD station shortly thereafter and met with Det. Harold Vannado, Jr. of WPSO. The information and evidence they adduced was turned over to WPSO. Chief Armand then assigned FPD Officers Manning and Sgt. Virgil Maples to assist WPSO directly. |
| onfer with Anne Bryant of Aunt ne's K.&S. | a. FPD Dispatcher<br>b. Anne Bryant | Anne Bryant advised that surveillance videotape is six hour tape, that it will tape over itself if not removed. |
| hecal search. | a. FPD Officer Mark Bott | Though not scheduled to work, Bott continued to physically search for Ms. McCain and her vehicle until the time that she was found by the El Paso Police Dept. |
| elephone conference with Cook - ant. | a. Cook Byrd<br>b. FPD Reserve Officer Max Brumfield | Mr. Byrd telephoned FPD to advise of dumpster located across the street near the old motel and that area should be checked because of a suspicious person. |
| elephone conference between Anne ryant of K.&S.#I. | a. Anne Bryant<br>b. FPD Dispatcher | Provide update of investigation. |
| nd repeat BE ON THE OOKOUT (BOLO). | a. St. Tammany Parish Sheriff's Office dispatcher - unknown<br>b. FPD Reserve Officer Max Brumfield | Provide agents all information concerning disappearance of Ms. McCain and request that information be given to all officers. |

eCain's ability based upon review of their files and recollection.

...ed described was to located as evidence where she might be and evidence of a crime.

7

000029

## SUPPLEMENTARY INVESTIGATION REPORT

PAGE N

12-34-96                          Missing Person–Possible Agg. Kidnapping NO.
                                  Classification

of Complainant                              Address                                    Phor

Franklinton Police Dept.          803 Pearl St Franklinton, La  70438      (504)
                                  Case Assigned To:
Missing person– Possible Agg. Kidnapping  |  Sgt. Virgil Maples

DETAILS OF OFFENSE, PROGRESS OF INVESTIGATION, ETC.:

Date_____ 12-

On 12-5-96 at approx 02:30 Sgt. Billy Jones contacted me Sgt. Virgi
in reference to Mrs. Edna McCain being missing from K & S #1 on Mott St

Sgt. Jonesadvised me he had checked at K & S #1 and had found a knif
parking area of K & S #1. He stated the knife had, what he thought, was blood on the

I told Sgt. Jones to locate a key holder to business and I would mee
at K & S #1.

I arrived at K & S #1 at 03:07 A.M. and Sgt Jones, Ptn Mark Bott and
Vicki McCain who is an employee at K & S #1, were waiting for me.

Mrs. McCain unlocked K & S #1 and the store was entered. The stores
sign of foul play.

The money for opening the store was in the cash register. The doors
been locked and the alarm was set.

Mrs. McCain stated Mrs. Edna should have made a night deposit at Han
bank. Sgt. Jones had radio dispatcher Michelle Machella call Mr. Cook Byrd of the
Hancock Bank to see if we could check the night deposit. Mr. Byrd contacted Mrs. Edw
Mrs. Edwards met us at Hancock Bank at 03:38. Mrs. Edwards, myself, Sgt Jones, and
Ptn. Bott entered the building. Mrs. Edwards opened the night deposit and there had
been no night deposit from K & S #1.

Myself, Sgt. JOnes, Ptn. Bott, and Vicki McCain went back to K & S #
to see if deposit had been placed in Manager's desk. No deposit was found.

On researching the outside of the building a lottery ticket was foun
area where knife had been found. A black rat tailed comb was found in the parking are
where Mrs. McCain's car had been parked. A cigarette lighter was found under a stack
pieces of paneling. A picture of this lighter was taken but I believe it not to be
r this scene. Perpetrater would have had to have hidden this lighter where I found

ESTIGATING OFFICER _____ 29 REPORT MADE BY _____ DATE

SE FILED
☑  No ☐ | Cleared by arrest ☐    30 THIS CASE IS    Active    31 APPROVED BY          BADGE #
                                 Unfounded ☐  Inactive ☐  Other ☐

# SUPPLEMENTARY INVESTIGATION REPORT

PAGE NO. 2

2-34-96

Missing person-Possible Agg. Kidnapping
Classification

NO.

| me of Complainant | Address | Phone No. |
|---|---|---|
| Franklinton Police Dept. | 803 Pearl St. | (504) 839-2977 |

arse

Missing person-Possible Agg. Kidnapping

Case Assigned To:

Sgt. Virgil Maples

DETAILS OF OFFENSE, PROGRESS OF INVESTIGATION, ETC.:

Date __ 12-6 __ 19

under these pieces of panelling.  This lighter was not placed into evidence.

At approx. 05:00 A.M. Sgt Jones placed the knife in my possession at the Franklinton Police Department.  This knife was secured in Chief Lynn Armand's office and was turned over to Chief of Det. Harold Varnado Jr. of the Washington Parish S.O. on Dec. 5, 1996

The Rat tailed comb and lottery ticket was turned over to the Washington Parish S.O.  Det. Harold Varnado Jr. on Dec. 6, 1996 by Sgt Virgil Maples.

NVESTIGATING OFFICERISY

28 REPORT MADE BY

DATE 12-6-96

CASE FILED

30 THIS CASE IS  ACTIVE

31 APPROVED BY

BADGE #

0003

s ☑ No ☐ | Cleared by arrest ☐  Unfounded ☐  Inactive ☐  Other ☐

## SUPPLEMENTARY INVESTIGATION REPORT

PAGE NO.____

12-34-96

Missing Person
Classification

NO.____

Name of Complainant                    Address                    Phone No.____

Offense

Missing Person

Case Assigned To:
W.P.J.O

### DETAILS OF OFFENSE, PROGRESS OF INVESTIGATION, ETC.:

Date ___12-6___ 19__

On 12-5-96 I Sgt. Jones arrived at the scene of K+S #1 at Greenlaw ave and Matt st. Upon my arrival at appox 01:52 am I discovered a knife laying on the ground in the appox area of where the employees park there vehicles. At this point I Sgt. Jones put a pair of rubber gloves on and placed the knife into a brown evidence bag and placed it into my locked patrol unit. I did not put any marks on the bag, as to it's contents or to where it was located and who located, because there was only two officers working at the time and I was extremely busy trying to secure the scene and any other evidence that might be at the scene. Upon leaving the scene I returned to my office which is where I turned the brown evidence bag which contained the knife from the scene over to Sgt. Virgil Maples who was the acting detective at the time of this call.

End of Report

000272

INVESTIGATING OFFICER(S) Det. Mike Varnado wP-14  28 REPORT MADE BY Sgt. Billy Jones #P-5 DATE 12-6-9

29 CASE FILED
Yes ☒   No ☐ | Cleared by arrest ☐

30 THIS CASE IS
Unfounded ☒   Inactive ☐   Other☐

31 APPROVED BY

BADGE #

FD-302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription _____12/11/96_____

    DAVID STEIN, date of birth 10/5/47, of Highway 436 Pine, Louisiana, telephone number 504-848-7014, was interviewed at his place of employment, TRINITY MARINE PRODUCTS, Highway 21, Madisonville, Louisiana, telephone number 504-845-3556. After being advised of the identity of the interviewing agent, he provided the following information:

    Stein stated, he sometimes gives Rondy Vernon a ride to work. Stein advised, he drives past Vernon's house on his way to work, and that he and Vernon had agreed, if Vernon needed a ride to work in the morning, he would leave his front porch light on, and this would be a signal for Stein to stop and pick him up. Stein stated that he picked Vernon up on Monday, 12/2/96, and brought him to work. Stein advised he did not see any lights on at Vernon's house on Tuesday, 12/3/96, and did not give him a ride that day. Stein also stated, that he did not stop to pick up Vernon on Wednesday 12/4/96, but he believed that on this date, he noticed a white car on the right side of Vernon's residence, Stein stated he could see the car from the highway, and it appeared to be a station wagon. Stein stated he did not see any lights on at Vernon's house on Thursday or Friday and did not stop to pick him up.

000359

---

Investigation on ___12/6/96___ at Madisonville,Louisiana

File # 7A-NO-61434      Date dictated ___12/11/96___

by SA W. Ellis Simpson

346UES·05. 302

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

C.C.                                                        08-24-98

Mr. J. Kevin McNary
Attorney At Law
1123 S. Tyler St.
P.O. Box 316
Covington, La. 70434


Dear Mr. McNary:

I am forwarding this letter to you in behalf of my
case.

I would like to know, did you check out my place of employ-
ment?

Trinity Marines - work history

Brenda - how she gives out checks, work history etc......

Nurse - Medical history at job - consisting of any accident on
job.

Sincerity Guard - how he log each visitor in on log book &
calls to office.

Dennis Glass - & Phillip Jenkins - Dennis my former Phillip-
my welder supervisor as well as my welder inspector

Did you send the investigator to Kentwood, La. to check
out the 4 policemen on the corner, on the nite she and
I left town on date of December 1996 & the service
station on Inter-State 20, just below the Brantling
Univ. Exit?

Mr. McNary, I am innocent of these charges that I am
charged with - I haven't done anything wrong

C. C.
II

Edna and I had a sexual relationship and she had be
seeing to my bills at the W. P. Gas District #2 G
over twenty months. I had NO REASON to hurt he
For what? Why SHOULD I KILL MY MONEY? I
be A Damn Fool!

Mr. McNary, I want, NO, I NEED to know are yo
in behalf of my best Interest? If you're not Plea
For GOD SAKE Remove thy self off my case. Beca
use I am Innocent of these charges, I know you
can win this case, if you're in my best Interes
and concern about winning this case.

** I was Informed that Mike Varnado and Harold Vari
had my cloths, the cloths that I had on the Nite Edn
And I left town (12-04-96) the way it was stated to m
they have more cloths than what I had on.

Mike Varnado stated - to Harold, if he have a good Lawye
he could eat this up, because how could he have on all
these cloths at one time.

Mike Varnado also stated: Let TIGER F__K - UP th
case and I'll kill him, because TIME IS RUNNIN
OUT! Who ever TIGER IS, he sent my cloths to th
LAB.

Question Since the F.B.I. has backed - up on this case, would
you feel or think that there's nothing on my cloths to
jeopardize this case? And if it was something on my
cloths the F.B.I. wouldn't have backed up, plus the fac
they probably been sent my cloths to the LAB for
testing, how many times do they test them?

c.c.

III   I just wanted to bring this to your Attention, in case they have tried to put something on my cloths or Anything that might can help them try to get a conviction.

Mr. McNary, I'll set back here and die and go to hell before I plead guilty to something I didn't do. I am INNOCENT of these Changes, and I am pleading with you to please Fight For me.

I turned myself in on Dec. 8th of 96, two years will be this Dec. 8th can they let whole nee longer, Man I am Ready to go home, how did they get an INDICTMENT on these Changes? Please let me Know and show me the legal Indictment. I can't believe. Thank you For Reading this letter and I hope in God that you are willing to Fight For me, because I am A INNOCENT-MAN

Rondy Ven——
08-24-98



# *Texas Department of Transportation*

P.O. BOX 133067 • DALLAS, TEXAS 75313-3067 • (214) 320-6100

December 19, 2002

Rondy Vernon Sr. #93669
C/o Camp "C" Wolf-3 Dorm
Louisiana State Penitentiary
Angola, Louisiana 70712

Re:   Request for Information sent to Mr. Jay R. Nelson, P.E. on December
      12, 2002

Dear Mr. Vernon:

Your request for information has been forwarded to me for handling. The Dallas
District had one construction project that was active on IH 20 during December of 1996. I
have enclosed a copy of our District Project Sheet that provides the contractor information.

Sincerely,

Sandra R. Williams
Legal Assistant to Sue F. Reid
Dallas District Staff Attorney

:sw
Enclosure

X-1

*Acending to Law These Records are Open to anyone Requesting them! Claudia T—*

From: Daniel Dalager
To: Ralaine Greene *for Claudia I Jacobs for Rondy Vernor Sr.*
Date: 12/2/02 11:21AM
Subject: Re: Open Records Request

12/02/02

Ralaine: *for Claudia I Jacobs for Rondy Vernor Sr.*

I had one project:

Project #: UBF-IM 20-1(131)110
Control #: 0004-07-097
County: Ector
Contractor: Reece Albert, Inc. ($173,419.30)
Work Description: Rehabilitation of 6 ramps consisting of Grading, HMAC, and Pavement Markings.

Call if you need anything else.

>>> Ralaine Greene 11/27/02 04:04PM >>>
Sorry for the short notice, but we have received an open records request. The information they are requesting is: they would like to know what contractor information we have on work that was being done on IH-20 west between Dallas and El Paso during December, 1996. Any highway construction/maintenance project information would help. Most districts have responded by saying that they no longer have these records since it was so long ago.

If you do not have any information about this, please groupwise me with a negative response. I need this information by Monday afternoon, December 2nd.

Thanks !!!

# TEXAS DEPARTMENT OF TRANSPORTATION

## PLANS OF PROPOSED

## STATE HIGHWAY IMPROVEMENT

FEDERAL PROJECT NO. IM 20-3(55)352

I.H. 20

EASTLAND COUNTY

FOR THE CONSTRUCTION OF: ASPHALTIC CONCRETE PAVEMENT
PLANING, ASPHALTIC CONCRETE PAVEMENT OVERLAY AND PAVEMENT MARKINGS

LIMITS: FROM LP 254 EAST OF RANGER, E TO 3.4 MILES.

NET LENGTH OF PROJECT = 17,800 FT. = 3.371 MI.

|  | ROADWAY | BRIDGE | TOTAL |
|---|---|---|---|
| = 17,800 FT. | = 3.371 MI. |
| = 00,000 FT. | = 0.000 MI. |
| = 17,800 FT. | = 3.371 MI. |

CONSISTING OF DESIGN SPEED = 70 MPH

END. PROJ. IM 20-3(55)352
STA. 1850-00
CTRL. 0007-06-061
REF. MRK. 358-0.608

BEG. PROJ. IM 20-3(55)352
STA. 1672-00
CTRL. 0007-06-061
REF. MRK. 355-0.237

BEG. PROJ. IM 20-3(155)352
STA. 1646-34.8
PROJ. IM 20-3(44)350

END. PROJ. IM 20-3(55)352
STA. 1850-00
PROJ. IM 20-3(51)330

SCALE 0    1.5    3   MILES

STANDARD SHEETS 1861.001

## GENERAL SECTION
GENERAL NOTES & SPEC.
ESTIMATE & QUANTITY
TRAFFIC & CONTROL PLAN
RAMP DETAIL

TCP 12-6)-95
TCP (3-2)-95
PM (1)-95
PM (2)-92
RPM(1)-92
NZ(STPM)-92
FPM(1)-92
D & OM(1)-95, & 4 & OM (4)-95
BC (1), (2)-95
(6), (7), (3), (4), (5),
TCP (NOTES)- 95

STANDARD SHEETS SPECIFICALLY
HAVE BEEN ISSUED BY ME AND ARE APPLICABLE
IDENTIFIED ABOVE
TO THIS PROJECT.

LARRY G. SMITH P.E.

THE CONSTRUCTION WORK WAS PERFORMED IN
ACCORDANCE WITH THE PLANS AND CONTRACT.

AREA ENGINEER

NO EXCEPTIONS
NO EQUALIZ ION-
NO R.R. CROSSINGS.
NONE. ELIMINATED.

DATE CONTRACTOR BEGAN WORK,
DATE WORK WAS COMPLETED & ACCEPTED,
FINAL CONTRACT COST, $

RECOMMENDED FOR LETTING

RECOMMENDED FOR LETTING

DIRECTOR OF CONSTRUCTION

DISTRICT ENGINEER

TEXAS DEPARTMENT OF TRANSPORTATION

U.S. DEPARTMENT OF TRANSPORTATION
FEDERAL HIGHWAY ADMINISTRATION

TABULATION OF BIDS
TEXAS DEPARTMENT OF TRANSPORTATION, AUSTIN

PAGE 1
HWY IH 20
BIDDER JOB 5   CTY 68   DIV 48
JOB PAGE 1
BIDDER JOB 5 3010 68 48

CONTROL 0007-06-061,ETC
LENGTH 4.922 MILES
DATE 03/12/96

CONTRACTOR STEPHENS MARTIN PAVING, INC.
ADDRESS ABILENE, TX 2077
CHECK $50,000

COUNTY EASTLAND
PROJECT IM 20-3(55)352
TYPE ASPHALTIC CONCRETE PAVEMENT OVERLAY
TIME 50 WORKING DAYS
TIME LIMITS FROM:LP 254 EAST OF RANGER, E   TO:3.9 MILES

| ALT ITM DES | ITEM CODE | ITEM DESCRIPTION | UNIT | QUANTITY | UNIT BID | AMOUNT | UNIT ENG EST | OVER / UNDER DOLLARS | % |
|---|---|---|---|---|---|---|---|---|---|
| 150 | 503 SP | BLADING | HR | 40.000 | 65.000 | 2,600.00 | 65.00 | | |
| 247 | 82904 | FL BS (COMPL IN PLAC)(OC)(TY A GR6 CL4) | CY | 1,978.000 | 23.950 | 47,373.10 | 27.00 | 7,021.90- | 13- |
| 354 | 5556 | PLAN ASPH CONC PAV (2.5") | SY | 151,180.000 | .450 | 68,031.00 | .75 | 45,354.00- | 40- |
| 500 | 5015 | MOBILIZATION | LS | 1.000 | 29,021.000 | 29,021.00 | | 75,976.00- | 72- |
| 500 | 501003 | BARRICADES, SIGNS AND TRAF HANDLE | LS | 1.000 | 7,500.000 | 7,500.00 | | 300.00- | |
| 502 | 541 | DEL ASM TY A (D-SW) POST MNT | EA | 5.000 | 38.750 | 232.50 | 2,600.00 | | |
| 502 | 542 | DEL ASM TY A (D-SY) POST MNT | EA | 6.000 | 39.250 | 117.75 | | | |
| 658 | 501 | REMOV DELIN & OBJECT MARKER ASSMS | EA | 3.000 | 9.000 | 81.00 | 40.00 | 2.25- | 3- |
| 658 | 581002 | WRK ZN PAV MRK SH TRM (TAB) TY W | EA | 9.000 | .750 | 6,929.25 | 40.00 | 9.10- | |
| 658 | 581002 | WRK ZN PAV MRK SH TRM (TAB) TY Y-2 | EA | 9.239 | .750 | 615.00 | 10.00 | 2,309.75- | 10- |
| 659 | 583002 | WRK ZN PAV MRK TY W | LF | 820.000 | .750 | 615.00 | 1.00 | 205.00- | 25- |
| 658 | 501016 | REFL PAV MRK TY I (W) (4") (SLD) | LF | 16,384.000 | .210 | 3,440.64 | .22 | 163.84- | 5- |
| 502 | 502016 | REFL PAV MRK TY I (W) (4") (BRK) | LF | 4,096.000 | .230 | 942.08 | .25 | 40.96- | 6- |
| 501 | 524016 | REFL PAV MRK TY I (Y) (4") (SLD) | LF | 17,694.000 | .230 | 4,069.62 | .25 | 351.88- | 8- |
| 661 | 531 | PREFAB PAV MRK TY B (W) (H) (SLD) | LF | 35,600.000 | .230 | 67,284.00 | 2.00 | 9,484.00- | 6- |
| 662 | 532 | PREFAB PAV MRK TY B (W) (4") (SLD) | LF | 35,500.000 | 1.890 | 17,266.00 | 4.00 | 2,136.00- | 35- |
| 662 | 555 | PREFAB PAV MRK TY B (W) (8") (BRK) | LF | 8,900.000 | 1.940 | 1,520.00 | 4.00 | 155.05- | 3- |
| 662 | 535 | PREFAB PAV MRK TY B (W) (8") (SLD) | LF | 1,890.000 | 1.800 | 543.25 | 3.00 | 66.75- | 12- |
| 666 | 581 | PREFAB PAV MRK TY B (Y) (4") (SLD) | EA | .230 | 2.650 | 1,173.25 | 2.50 | 1,179.25 | 12- |
| 666 | 502016 | RAIS PAV MRKR CL B (REFL) TY I-C-R | EA | .210 | 2,650 | 928.18 | 40.00 | 2.50- | 9- |
| 666 | 524016 | RAIS PAV MRKR TY I-A-A | EA | .230 | 36,570 | 722,402.40 | 45.00 | 16,031.82- | 1- |
| 3063 | 525002 | HOT MIX ASPH (TY C)(SURF)(SBS ADD) | TON | 15,870.000 | 45.520 | | 45.00 | 8,252.40 | |
| 3063 | 535002 | HOT MIX ASPH (TY CMHB-C)(SBS ADD) | TON | 4,674.000 | | | | | |

MISCELLANEOUS COST 500.00

TOTAL BID 1,222,316.97

TOTAL BID 1,222,316.97
BID+MISC 1,222,816.97

TOTAL PROJECT COST EST+MISC 1,377,984.60

SUM $ O/U 155,167.63-

TOTAL OVER / UNDER DOLLARS 155,167.63-   %  11.26-

NO. BIDDERS 6
NO. ITEMS 22
JOB DIV NO. 3010
NO. 48

# DISTRICT PROJECT SHEET



**ENGINEER:** Charlton

**MGR. NO.:** 57

**CONTRACT NO.:** 3963024
**PROJECT:** IM20-5(115)500
**CONT:** 0495  **SECT:** 01  **JOB:** 036

**HWY:** IH 20
**COUNTY:** KAUFMAN
**LENGTH:** 14.046 MI
**DAYS ALLOWED:** 52
**ADD'L DAYS:** 15
**CONTRACT COST:** $500,011.30

**CONTRACTOR:**
6809  HARRIS ACOUSTICS, INC.
P.O. BOX 5641
ABILENE TX  79608

**CLASS OF WORK:**
CONCRETE PAVEMENT REPAIR

**LETTING DATE:** 03/12/1996
**W.O. DATE:** 04/29/1996
**TIME STARTS:** 051596
**WORK BEGAN:** 06/11/1996
**PARTIAL ACCEPT:** 12/11/1996
**JOB COMPLETED:** 12/11/1996

**JOB LIMITS:**
**FROM:** SPUR 557 & IH 20
**TO:** VAN ZANDT CO LINE
**OUTSIDE PART.:**
**NOI SUB.:**
**NOT SUB.:**

**EPA PERMIT NO.:** N/A

**RECORDS REC'D:** 01/24/1997

**CHECK COMPLETED:** 01/31/1997
**STORAGE FILE NO.:** 1739-1
**1446C SUB.:** 12/22/1997
**FHWA47 SUB.:** N/A
**TEST CERT.:** 01/24/1997

**WORK ACCEPTED:** 12/17/1996
**RETAINAGE REL.:** 12/18/1996
**DBE FINAL REC'D:** 02/07/1997
**FINAL SUBMITTED:** 02/26/1997
**PLANS SUBMITTED:** 05/17/1997
**PLANS RECEIVED:** 07/31/1997
**FINAL PAYT MADE:** 05/07/1997
**FED FUNDS PAID:** 04/30/1999
**NUM C.O.:** 7
**TOTAL. C. O.:** ($42,328.14)
**TOTAL COST:** $366,532.29

**DBE:** 5%
**LATITUDE:**

**OVERSIGHT:** State
**LONGITUDE:**

**DESTROY DATE:** 02/26/2001

**SURETY:**      BITUMINOUS CASUALTY CORPORATION

**MISC. NOTES:**

Knight Construction Inc.
PO Box 3428
Big Spring Tx  79721
915/263-0231

Four Seasons Landscape Co.
PO Box 878
Baird Tx 79504
915/676-1302

JH Strain & Sons
PO Box 277
Tye Tx  79563
915/692-0067