UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONDY VERNON, SR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-7608** |
| **BURL CAIN, WARDEN, ET AL.** | **SECTION "A"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

### I.  Factual and Procedural Background

The petitioner, Rondy Vernon, Sr. ("Vernon"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On January 24, 1997, Vernon was indicted by

---

[1] Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1, Petition.

a Grand Jury in Washington Parish for the first degree murder of Edna McCain.[3]  The indictment was later amended on March 5, 2001, to change the charge to second degree murder.[4]

The record reflects that, on December 4, 1996, at 10:28 p.m., Edna McCain clocked out from her job at K&S Conoco, a local convenience store, in Franklinton, Louisiana.[5]  At closing time, the normal procedure was for the clerk to lock the door, do the paperwork, and take the night deposit to the bank or place it in a file cabinet or desk drawer.  McCain did not return home from work that night.  As a result, her boyfriend, Vernon Jenkins, called the police regarding her disappearance.

While searching for McCain, who went missing that night, the police discovered a boning or skinning knife in the employee parking area at the Conoco.  They also found her vehicle about 200 to 300 yards from the convenience store.  The night deposit was not found.

On December 6, 1996, a purse containing McCain's driver's license was discovered in El Paso, Texas.  The next day, McCain's body was discovered in the trunk of a car in El Paso.  Vernon's fingerprints were on the vehicle.  The coroner determined that McCain died of hypothermia.  She also had a 1.25 inch scratch under her right eyelid and bruising to her face and the inside of her mouth.  She also had bruising and scratches to her left knee and ankle.  She suffered two .25 inch cuts to her right index finger, a .5 inch cut to the back of her right hand, and a 1.5 inch scratch to the left side of her neck.  She also suffered bruising to the back of her right leg, her left gluteal area, and her scalp.

---

[3]St. Rec. Vol. 2 of 9, Indictment, 1/24/97.

[4]*Id*., Amended Indictment, 3/5/01.

[5]These facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal.  St. Rec. Vol. 4 of 9, 1st Cir. Opinion, 2001-KA-2104, pp. 2-4, 9/27/02.

Vernon's sister, Cheryl Warren, received a failed telephone call from an unidentified caller in El Paso, Texas on December 6, 1996. The next day, she received a call from Vernon from Albuquerque, New Mexico. Warren testified that Vernon sounded scared and would not tell her his location. She told him to turn himself in because the police were looking for him in connection with McCain's disappearance. She also told him he should release McCain, and Vernon replied that it may be too late.

On December 8, 1996, Vernon spoke to the FBI and gave the following account of the events. On December 4, 1996, he went to a convenience store in Washington Parish to buy some cigarettes. He had a kitchen knife with him. He saw a woman coming out of the store, and he decided to rob her. The woman struggled and he dropped his hat and the knife. Because she could recognize him, he put her in the car and drove off with her. He needed gas, but he was afraid the woman would yell, scream, or try to escape, so he put her in the trunk. He checked into a motel in El Paso and called his sister. The next day, he bought a bus ticket to Albuquerque. Before he left, he told McCain to make noise so people would hear her to let her out of the trunk. Vernon denied the truth of this confession at trial.

Vernon was tried before a jury on March 5 through 9, 2001, and he was found guilty as charged of second degree murder.[6] At a hearing held on March 15, 2001, the Trial Court denied Vernon's motions for new trial and for post-verdict judgment of acquittal.[7] After waiver of legal

---

[6]St. Rec. Vol. 2 of 9, Trial Minutes, 3/5/01; Trial Minutes, 3/6/01; Trial Minutes, 3/7/01; Trial Minutes, 3/8/01; Trial Minutes, 3/9/01; St. Rec. Vol. 3 of 9, Trial Transcript (continued), 3/7/01; Trial Transcript, 3/8/01; Trial Transcript, 3/9/01; St. Rec. Vol. 5 of 9, Trial Transcript, 3/5/01; St. Rec. Vol. 6 of 9, Trial Transcript (continued), 3/5/01; Trial Transcript, 3/6/01; St. Rec. Vol. 7 of 9, Trial Transcript (continued), 3/6/01; Trial Transcript, 3/7/01.

[7]St. Rec. Vol. 2 of 9, Sentencing Minutes, 3/15/01; St. Rec. Vol. 3 of 9, Sentencing Transcript, 3/15/01.

delays, the Trial Court sentenced Vernon to serve life in prison without benefit of parole, probation, or suspension of sentence.[8]

On direct appeal, Vernon's appointed counsel raised two assignments of error:[9] (1) the Trial Court erred in denying the motion for change of venue; and (2) he was denied full appellate review, because of the missing transcript of the *Daubert* hearing.  On September 27, 2002, the Louisiana First Circuit Court of Appeal denied relief finding no merit in either of the claims.[10]

The Louisiana Supreme Court also denied Vernon's timely-filed writ application without reasons on September 19, 2003.[11]  Vernon's conviction became final 90 days later, on December 18, 2003.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S.Ct. Rule 13(1).

Over eight months later, on August 30, 2004, Vernon submitted an application for post-conviction relief to the Trial Court.[12]  As relief, Vernon requested that the Trial Court issue an order compelling the district attorney's office to turn-over its files to him so that he could later file a thorough application for post-conviction relief.  The Trial Court denied his request as moot on September 28, 2004.[13]

---

[8]*Id*.

[9]St. Rec. Vol. 4 of 9, 1st Cir. Opinion, 2001-KA-2104, 9/27/02; Appeal Brief, 2001-KA-2104 (undated).

[10]*Id*.

[11]*State v. Owens*, 853 So.2d 632 (La. 2003); St. Rec. Vol. 4 of 9, La. S. Ct. Order, 2002-KO-3011, 9/19/03; La. S. Ct. Letter, 2002-KO-3011, 12/11/02 (showing postmark of 10/17/02); La. S. Ct. Writ Application, undated copy.

[12]St. Rec. Vol. 1 of 9, Uniform Application for Post-Conviction Relief, signature dated 8/30/04; Rec. Doc. No. 1-2, p. 11, Certified Mail Receipt date 8/30/04.  Although the petition does not bear a file-stamp date, Vernon's signature date is considered to be the filing date under the applicable mailbox rule.

[13]St. Rec. Vol. 1of 9, Trial Court Order, 9/28/04.

Almost nine months later, on June 17, 2005, Vernon submitted to the Trial Court a proposed supplemental brief to be filed in support of his prior application for post-conviction relief.[14] He raised nine claims in this supplemental memorandum: (1) improper venue; (2) invalid indictment; (3) double jeopardy and denial of due process; (4) that the indictment failed to inform him of the specifics of the charge; (5) that the trial court's errors violated his rights; (6) prosecutorial misconduct; (7) police misconduct; (8) ineffective assistance of counsel; and (9) that the cumulative errors violated due process.

Although Vernon claims to have received an order dated August 19, 2005, denying his request to supplement, and the State claims to have sent such an order, no such order appears in the record.[15] Furthermore, neither he nor the State have provided this Court with a copy of any such order. Nevertheless, the record does contain a motion, submitted on October 27, 2005, from Vernon seeking an order to compel the district attorney to answer his supplemental claims.[16] This motion was denied by the Trial Court on November 10, 2005.

On November 11, 2005,[17] Vernon submitted a writ application to the Louisiana First Circuit in which he requested an extension of time to file a writ and to exceed page limits.[18] By order issued March 27, 2006, the Court granted the extension of time, but denied the request to exceed page

---

[14] St. Rec. Vol. 1 of 9, Supplement to Pending Application for Post-Conviction Relief, 6/23/05.

[15] *See* Rec. Doc. No. 1-2, p. 2, Memorandum in Support, and Rec. Doc. No. 12, p. 2, Opposition Memorandum.

[16] St. Rec. Vol. 1 of 9, Motion to Compel Answer, 11/3/05 (dated 10/27/05).

[17] Since the State failed to produce a copy of this writ application, the submission date is taken from Vernon's pleadings. Rec. Doc. No. 1-2, p. 3, Memorandum in Support. The State does not suggest any other submission date for purposes of applying the applicable mailbox rule.

[18] The State failed to produce a copy of this writ application.

limits.[19]  In addition, the Court denied the writ application finding that Vernon had failed to comply with the procedural requirements to provide the necessary documents for the Court's review.  The Court instructed him to submit a proper application by May 22, 2006.

In the meantime, Vernon submitted a letter to the Trial Court dated March 30, 2006, in which he requested the Court to rule on his original and supplemental post-conviction memoranda.[20]  The request was denied by the Trial Court on August 10, 2006.[21]

While that was being addressed, on May 19, 2006, Vernon submitted another writ application to the Louisiana First Circuit.[22]  On August 21, 2006, the Court denied the application because Vernon failed to comply with the Court's prior ruling on March 27, 2006.[23]

Vernon submitted a writ application to the Louisiana Supreme Court on September 20, 2006, arguing that the trial court erred in denying his application for post-conviction relief without an evidentiary hearing, and the appellate court erred in refusing to consider his application to that Court.[24]  On September 14, 2007, the Louisiana Supreme Court denied the application without stated reasons.[25]

---

[19]Rec. Doc. No. 1-2, p. 9, 1st Cir. Order, 2005-KW-2727, 3/27/06.

[20]St. Rec. Vol. 1 of 9, Letter to Trial Court, 4/6/06 (dated 3/30/06).

[21]St. Rec. Vol. 1 of 9, Trial Court Order, 8/10/06.

[22]Rec. Doc. No. 1-2, p. 7, Inmate's Request for Legal/Indigent Mail, 5/19/06.  The State failed to produce a copy of this writ application.

[23]Rec. Doc. No. 1-2, p. 6, 1st Cir. Order, 2006-KW-1063, 8/21/06.

[24]St. Rec. Vol. 1 of 9, La. S. Ct. Writ Application, 06-KH-2766, 11/28/06 (dated 9/20/06).

[25]*State ex rel. Vernon v. State*, 963 So.2d 393 (La. 2007).

## II.     Federal Petition

On November 7, 2007, the Clerk of this Court filed Vernon's petition for federal habeas corpus relief, in which he raised three claims:[26] (1) the missing *Daubert* transcript denied him appellate review; (2) the Trial Court lacked subject matter jurisdiction as an improper venue; and (3) ineffective assistance of counsel.

The State filed an answer and memorandum in opposition to Vernon's petition arguing that Vernon's petition is not timely filed and his claims are otherwise without merit.[27]

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[28] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on October 19, 2007.[29]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies

---

[26]Rec. Doc. No. 1.

[27]Rec. Doc. No. 12.

[28]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[29]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Vernon's federal habeas petition on November 7, 2007, when the filing fee was paid. Vernon did not date his signature on the petition itself. He did, however, date the cover letter submitted with the petition on October 19, 2007. This is the earliest date on which he could have delivered the packet of papers to prison officials for mailing. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State in this case argues that Vernon's federal petition was not timely filed. For this reason, the Court will outline the proper dates and calculation below.

## IV. Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[30] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). As determined above, Vernon's conviction was final on December 18, 2003. Under the plain language of § 2244, Vernon had until December 18, 2004,[31] to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Vernon's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a state

---

[30]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
D.  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

[31]Although it is not relevant here, December 18, 2004, was a Saturday and the filing period would have expired on the following Monday, December 20, 2004.

post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir.), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams v. Cain*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2nd Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 2001 WL 995164, slip op. at \*5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005). Requests for document and transcript copies, like those filed by

9

this petitioner, are not other collateral review for purposes of the tolling calculation. *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523, at *2 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); *Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); *Jones v. Johnson*, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling); *Cf. Gonzales v. Wilkinson*, 269 Fed. Appx. 481, 484-86 (5th Cir. Mar. 12, 2008) (delay in receiving transcript copies does not warrant statutory or equitable tolling where motion based on the transcript was not timely or properly filed under state law).

In this case, the AEDPA filing period began to run on December 19, 2003, the day after Vernon's conviction was final. The filing period continued to run for 255 days, until August 30, 2004, when Vernon submitted his application for post-conviction relief to the Trial Court. The application remained pending until October 28, 2004, which was 30 days after the Trial Court denied the application as moot on September 28, 2004, and he did not seek review.[32]

The AEDPA filing period again began to run the next day, October 29, 2004, for another 110 days, until February 15, 2005, when it expired. Vernon had not properly filed state post-conviction or other collateral review pending during that time. His next state court filing, the proposed supplemental post-conviction memorandum, was submitted on June 17, 2005, which was 121 days

---

[32]Prior to filing in this Court, Vernon acknowledged that the Trial Court in fact ruled on his first application for post-conviction relief on September 28, 2004. *See* St. Rec. Vol. 1 of 9, La. S. Ct. Writ Application, Supplemental Brief, p. 1, ¶V, 11/28/06.

after the AEDPA filing period expired. Pleadings filed after expiration of the AEDPA filing period do not provide any tolling benefit. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace*, 544 U.S. at 418); *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002). In this case, Vernon has not provided, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling.[33] Furthermore, Vernon's reference to delays caused by and after Hurricane Katrina which struck the New Orleans area late August 28, 2005 into the morning of August 29, 2005, are irrelevant here. The AEDPA filing period expired months before this event.

---

[33]Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner. *See Holland*, 78 U.S.L.W. 4555, 2010 WL 2346549, at *14 (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman*, 184 F.3d at 402 ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

Vernon's federal petition is deemed filed on October 19, 2007, which was almost two years and eight months after the AEDPA filing period is considered to have expired on February 15, 2005. Therefore, Vernon's federal petition must be dismissed as untimely filed.

**V.     Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Rondy Vernon, Sr.'s petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[34]

New Orleans, Louisiana, this 8th day of December, 2010.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[34] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.